278 P.2d 991

Wendell E. KNIGHT, Louis Odermott, Willard McGrath, Leonard R. Starkey, and Sam E. Roeber, Plaintiffs-Appellants,

v.

CLASS A SCHOOL DISTRICT NO. 2, Ada County, State of Idaho, and Ross Boyack, George Judd, John Bentley, William Lenzi, and Lloyd McGrath, as Trustees thereof, Defendants-Respondents.

J. W. CULLEN, W. E. Adams, W. W. Carpenter, Jerry Ryska, and Edgar Joplin, Plaintiffs-Appellants,

v.

CLASS A SCHOOL DISTRICT NO. 2, Ada County, State of Idaho, and Ross Boyack, George Judd, John Bentley, William Lenzi, and Lloyd McGrath, as Trustees thereof, Defendants-Respondents.

No. 8087.

Supreme Court of Idaho.

Jan. 11, 1955.

Laurence N. Smith, Caldwell, for appellants.

Anderson, Kaufman & Kiser, Boise, for respondents.

PORTER, Chief Justice.

Class A School District No. 2, Ada County, was organized April 15, 1950, under the provisions of an "Act For Reorganization Of School Districts" enacted by the Legislature as Chapter 111, 1947 Session Laws, as amended by Chapter 129, 1949 Session Laws. Such school district lies wholly within Ada County and embraces thirty-two previously existing school districts of various types of organization. It includes former Common School District No. 12, commonly known as the Eagle District, and former Common School District No. 16, commonly known as the Blue Valley District.

In the spring of 1953, it became known that the Board of Trustees of Class A School District No. 2 intended to discontinue the four-year high school in the Eagle District in so far as the 10th, 11th and 12th grades were concerned; and to discontinue the grade school in the Blue Valley District. Thereupon, pursuant to the provisions of the Reorganization Act, as amended, on July 20, 1953 more than five qualified school electors of the former Eagle School District petitioned the Board of Trustees of Class A School District No. 2, to hold an election to determine whether or not the Eagle High School should be discontinued. Likewise, more than five qualified school electors of the former Blue Valley District, at the same time, petitioned the said Board of Trustees to hold an election to determine whether or not the grade school in such district should be discontinued.

The Board of Trustees of Class A School District No. 2 refused to hold the requested elections. Whereupon qualified school electors in former Common School District No. 12 commenced an action in the District Court in Ada County seeking a Writ of Mandate to compel the Board of Trustees of Class A School District No. 2 to hold an election on the question of whether or not the four-year high school at Eagle in former Common School District No. 12 should be discontinued. A similar action was filed by qualified school electors in former Common School District No. 16, commonly known as the Blue Valley District.

The defendants having filed answers in each of such suits, the two actions were consolidated for trial. Upon the trial the court found against the plaintiffs in each action and denied the Writs of Mandate. An appeal was taken in each action to this

court where the appeals were consolidated for hearing.

The questions raised on these appeals involve the application and construction of the Reorganization Act as amended and particularly that part thereof codified as Section 33–522, I.C. That part of the 1947 Act originally codified as Section 33–522, I.C., reads as follow:

"Until otherwise provided by law, the boards of trustees of all class A and class B school districts created and established under the provisions of this act shall have and exercise such powers and perform such duties as now are or may hereafter, by law, be vested in and required to be performed by boards of trustees of independent school districts, class A, and joint independent school districts, class A; and the boards of trustees of all Class C school districts created and established under the provisions of sections 33–501—33–529 shall have and exercise such powers and perform such duties as now are or may hereafter, by law, be vested in and required to be performed by boards of trustees of common school districts and joint common school districts; provided, however, that except as otherwise prescribed by the state board of education, which shall be vested with such powers and duties, no such class A, class B or class C school district shall have any power, authority or duty, (a) to adopt a course

of study for the public school system of such district, (b) to prescribe the examinations, tests or qualifications necessary for pupils to enter the various grades of the elementary schools and of the high schools of such district, (c) to adopt text books for their public school system, or to make contracts with the publishers of text books."

The 1949 Amendment, after changing the sub-sections from (a), (b), (c) to (1), (2), (3), added the following amendment to said Section 33–522, I.C.:

"(b) The board of trustees of any reorganized school district, except such as have already voted for or issued bonds in such district, or have sold or removed any school house or plant in such district, shall have the power to discontinue operation of any attendance unit situate within the boundaries of the district except as this power is limited in this sub-section:

"1. If five (5) qualified school electors of a previously organized school district, wholly situate within the boundaries of the reorganized district, and which maintained an attendance unit in full operation at the time of the organization of the reorganized district, or maintained an attendance unit in full operation in the school year immediately preceding organization of such reorganized district shall, between June 1st and August 1st of any year, petition the board of trustees for

an election within such previously organized district on the question of discontinuance of such previously organized district's attendance unit, the Board shall order an election to be held within ten days in such previously organized district and shall submit to the qualified school electors of such district a ballot which contains the following proposals:

"For Discontinuance of Attendance Unit

"Against Discontinuance of Attendance Unit

"If sixty percent of the qualified electors of such previously organized district voting in such election shall vote against discontinuance of such attendance unit, the board of trustees of the reorganized district shall be without power to discontinue such attendance unit during that school year."

The present code Section 33–522, I.C., also includes an amendment made by Chapter 247, 1951 Session Laws, but which is not involved in these appeals.

At the time of the organization of the reorganized district and for the school year immediately preceding, a grade school and a four-year high school were maintained and operated in School District No. 12 at Eagle. By oral arrangement and agreement between the Board of Trustees of Common School District No. 12 and the Boards of Trustees of Common School Districts No. 3 and No. 25, the pupils of the latter two districts also attended the school at Eagle. The high school students from Districts No. 3 and No. 25 attended the Eagle High School upon a tuition basis. Both the grade school pupils and the high school pupils were transported to the school at Eagle in school buses operated by such school. The school supplies and equipment of Districts No. 3 and No. 25 were used in the Eagle School. The State and County apportionments for the minimum classroom unit requirements for pupils attending said school were paid to said District No. 12. School Districts No. 3 and No. 25 paid to School District No. 12 the actual average cost per capita for students attending the schools at Eagle. The schools at Eagle were governed and operated by the Board of Trustees of said District No. 12. The state school authorities, to describe this arrangement, invented the term, "temporary combination."

At the time of the reorganization and for the school year immediately preceding, a grade school was maintained and operated in the schoolhouse in Common School District No. 16, commonly known as Blue Valley. This grade school was operated in "temporary combination" with Common School District No. 2 in substantially the same manner as the grade school at Eagle was operated by arrangement with other school districts as above described.

The trial court found that such maintenance of the four-year high school at Eagle

and such maintenance of the grade school at Blue Valley did not constitute the maintenance of attendance units in full operation by Common School District No. 12 and Common School District No. 16 at the time of reorganization within the meaning of the 1949 Amendment of Section 33–522, I.C.

In Andrus v. Hill, 73 Idaho 196, at pages 203–204, 249 P.2d 205, at pages 209–210, this court discussed the meaning of the term "attendance unit", as used in the Amended Reorganization Act as follows:

"As stated, no attempt was made to define 'attendance unit', but it is referred to as a unit 'in full operation' and as 'such previously organized district's' attendance unit. These phrases would indicate that the attendance unit referred to was that which was in full operation at the time or times referred to in the amendment, that is, if the district had in full operation an elementary school of eight grades, that was its attendance unit. If it had in full operation a high school of four grades, that was another of its attendance units. If the school were a six grade elementary, a three grade junior high, or a three grade senior high, those were attendance units, within the meaning of the act. We have been cited to no ready-made definition of 'attendance unit.' 'Attendance area' is defined as 'a geographical and population area that is served by one school.' A Report of the Idaho Education Survey Commission (Peabody Report) p. 55; cf. School Administration, Moehlman, 1940, note p. 157. The legislature, of course, could not have had reference to such a term, but its choice of words would indicate that it intended to restore to the people of the attendance area the right to vote on the discontinuance of their attendance unit, *as it existed prior to the reorganization."* (Emphasis supplied.)

■ We conclude from the shown facts that Common School District No. 12, at the time of the organization of the reorganized district, was maintaining a four-year high school attendance unit in full operation within the meaning of the 1949 Amendment. Likewise, Common School District No. 16, at such time, was maintaining a grade school attendance unit in full operation within the meaning of such amendment. The trial court was in error in making its conclusions to the contrary.

The trial court found that Class A School District No. 2 had sold nine schoolhouses belonging to various former school districts incorporated in the reorganized district. The trial court also found that the schoolhouse at Eagle in Common School District No. 12 and the schoolhouse in the Blue Valley District had not been sold. The trial court concluded that it appearing that Class A School District No. 2 had sold schoolhouses within the reorganized district, such action deprived the electors of former Common School District No. 12

and former Common School District No. 16 of the right to elections on the issue of the discontinuance of their schools. Such conclusion of the trial court raises a question of the construction of that part of Section 33–522, I.C., reading as follows:

"(b) The board of trustees of any reorganized school district, except such as have already voted for or issued bonds in such district, *or have sold or removed any schoolhouse or plant in such district,* shall have the power to discontinue operation of any attendance unit situate within the boundaries of the district except as this power is limited in this sub-section:" (Emphasis supplied.)

That part of the 1947 Reorganization Act codified as Section 33–522, I.C., apparently empowered the Board of Trustees of a reorganized district to discontinue the attendance unit of any former school district without an election in such district. Dissatisfaction arose over the state from the exercise of such power and gave rise to the 1949 Amendment. The reason for and the purpose of such amendment are discussed at length by this court speaking through Justice Taylor in Andrus v. Hill, supra. In such case we recognized that the purpose of the 1949 Amendment was in effect to restore in some measure to the school patrons their historic right to have a voice in their local school affairs of which they had been deprived by the 1947 Reorganization Act. A similar recognition of the purpose of the

amendment is indicated in Robbins v. Joint Class A School Dist. No. 331, 72 Idaho 500, 244 P.2d 1104, where we noted that it is an exponent of the principle of home rule.

An examination of the above quoted subsection (b) readily shows it is ambiguous and subject to different interpretations, and the part thereof which we have emphasized may be made to march in several directions. The trial court interpreted the sub-section to mean that if a schoolhouse or plant anywhere in the reorganized district had been sold or removed, this empowered the Board of Trustees of the reorganized district to discontinue any attendance unit within the district without an election. Such interpretation would mean that by the sale or removal of any schoolhouse in the reorganized district the Board of Trustees of such district could automatically and permanently bar any elections on whether attendance units should be discontinued. There is no reasonable connection between the sale or removal of a schoolhouse in one part of the district and the right of the Board of Trustees to discontinue the high school at Eagle or the grade school at Blue Valley. Such construction of the statute by the trial court leads to an absurd and unreasonable result and one not in accord with the clear intent of the Legislature in enacting the 1949 Amendment.

In Smallwood v. Jeter, 42 Idaho 169, at page 184, 244 P. 149, at page 153, in construing an ambiguous feature of an act, this court changed the phrase "not less than

twelve passengers" to read "not more than twelve passengers", and said:

"Plaintiff contends that the insurance feature of the act is void because unintelligible, and that it 'cannot be corrected by the addition or omission of words.' We are entitled to, and must, look to the intention of the Legislature as gathered from the whole act, and when a literal reading of a provision will work an unreasonable or absurd result, if a reasonable intent of the Legislature can be arrived at, the court should so construe the act as to arrive at such intention rather than an absurdity. To accomplish this purpose, words may be changed, not to legislate, but to arrive at what the Legislature intended to enact."

In State v. Holder, 49 Idaho 514, 290 P. 387, this court quoted with approval the foregoing excerpt from Smallwood v. Jeter, supra. See also, Idaho Gold Dredging Co. v. Balderston, 58 Idaho 692, 78 P.2d 105.

In Keenan v. Price, 68 Idaho 423, at page 438, 195 P.2d 662, at page 670, this court, in supplying the word "not" in a statute, said:

"All statutes must be liberally construed with a view to accomplishing their aims and purposes, and attaining substantial justice, and the courts are not limited to the mere letter of the law, but may look behind the letter to determine its purpose and effect; the object being to determine what the legislature intended, and to give effect to that intent. Hamilton v. Swendsen, 46 Idaho 175, at page 180, 267 P. 229, and cases therein cited. See also Northern P. R. Co. v. Shoshone County, 63 Idaho 36, at page 40, 116 P.2d 221; State v. Holder, 49 Idaho 514, at page 520, 290 P. 387.

" 'It is the duty of courts to execute laws according to their true intent and meaning; and that intent, when collected *from the whole and every part of the statute taken together,* must prevail even over the literal sense of the terms and control the strict letter of the law, when the letter would lead to possible injustice, contradiction, and absurdity.' * * *. (Emphasis added.) Chandler v. Lee, 1 Idaho 349, at page 351."

In the light of the entire Reorganization Act and in view of our previous interpretation of the intent and purpose of the 1949 Amendment, we are of the opinion that the Legislature did not intend that all elections would be barred by the sale or removal of any schoolhouse in the reorganized district, but did intend by the words, "such district" as used in the statutory provision reading "or have sold or removed any school house or plant in such district" to refer to and designate the previously organized and existing school district whose

attendance unit it is proposed to discontinue. That is, the term "such district" must be construed to mean the original district whose attendance unit is in question and not the reorganized all-inclusive district. This construction leads to a sensible and reasonable result and effects the manifest purpose of the amendment.

The trial court erred in concluding that Common School Districts No. 12 and No. 16 were not entitled to have elections held on the grounds, first, because they were not maintaining attendance units in full operation at the time the reorganized district was formed, and, second, because some schoolhouses formerly belonging to other organized districts included in the reorganized district had been sold or removed.

The judgment in each of the cases is reversed and such cases are remanded to the trial court with directions to issue the Writs of Mandate requiring the Board of Trustees of Class A School District No. 2 to hold the school elections as prayed for in the complaints in such actions. Robbins v. Joint Class A School Dist. No. 331, supra. Costs to appellants.

TAYLOR, C. J., KEETON, J., and BAKER, D. J., concur.

GIVENS, J., concurred in this opinion prior to his retirement.