351 P.2d 482

A. C. WELLARD, Alice Wellard, George Giannini, Dorothea Giannini, Hale Yeaple, Grace Yeaple, Clarence Cooper, Phyllis Cooper, Delbert Wiles, Wanda Wiles, for and on their behalf, and all others similarly situated, Plaintiffs-Respondents,

v.

LaVern MARCUM, Superintendent, and Norman Hammond, Burke Poole, Clinton Murdock, Morgan Van Orden, Percy Fisher, Trustees of Snake River School District No. 52, a Municipal Corporation, Defendants-Appellants.

No. 8855.

Supreme Court of Idaho.

April 27, 1960.

Furchner & Stufflebeam, Blackfoot, for appellants.

Gus Carr Anderson, Pocatello, for respondents.

J. N. Leggat, Boise, amicus curiae.

. McFADDEN, Justice.

This action for writ of mandate was instituted by respondents, residents of Atomic City, Bingham County, Idaho, to compel the appellants, as superintendent and members of the Board of Trustees of Class "A" School District No. 52, to re-open the primary school at Atomic City, after it had been closed by order of the board dated April 13, 1959.

The present school district, No. 52, was created in 1948, pursuant to I.C. Title 33, Ch. 5, and consists of the combined territories of two former independent districts, including Independent District No. 48, and three former common school districts, all within Bingham County. Atomic City is situate in the boundaries of what was formerly Independent District No. 48, which is wholly situate within the bound-

aries of District No. 52. No school had ever been maintained at Atomic City or within District No. 48, prior to reorganization.

In the fall of 1952, an elementary school of eight grades with one teacher was opened by the trustees of District No. 52. Later the school was reduced to six grades, and then four. At the meeting of April 13, 1959, the Board of Trustees ordered the school closed for the forthcoming term, with all pupils to be transported by bus to the Moreland school, maintained by the district, some 26 miles distant. No notice of the proposed discontinuance of the school was ever posted or published by the Board, and no petition for an election to be held on the matter of the discontinuance, was ever filed with the Board. A letter was addressed to Mrs. Clarence Cooper, one of the respondents herein, advising her of the action of the board.

The trial Judge by his findings of fact and conclusions of law and decree generally found for respondents, holding that the school board had acted arbitrarily and unreasonably and did not consider the welfare and best interests of children in closing the attendance unit, and that the board had failed to comply with the provisions of I.C. § 33–522, as amended by S.L.1955, Ch. 107, in failing to give the notice of proposed discontinuance of an attendance unit.

Appellants by their specification of error challenge the trial court's findings, conclusions and decree in two particulars, that the Board acted arbitrarily and capriciously, and that the board was required to publish notice of proposed discontinuance of the attendance unit.

■■■ Proceedings of this nature for writ of mandate, are not available to review the acts of boards in respect to matters as to which they are vested with discretion, unless it clearly appears that they have acted arbitrarily and unjustly and in abuse of the discretion vested in them. 55 C.J.S. Mandamus § 133, p. 223. The school affairs in the districts being placed under the control and guidance of the trustees, it is necessary that a broad discretion be accorded them to exercise their authority efficiently. 47 Am.Jur. Schools, § 47, p. 328; People ex rel. Ball v. Johnson, 1950, 341 Ill.App. 423, 94 N.E.2d 444.

■■■ The facts before the court show that the Board of Trustees before taking this action had studied the matter, had met with the patrons of the school at various times, had secured advice of an advisory committee of residents of the district, and a survey team appointed by the State Superintendent of Public Instruction, and had considered many other factors including the problem of one teacher handling a number of classes, the expiration of three year lease on the building,

and the matter of progress of the students. To establish capriciousness or arbitrariness on the part of a board requires more than conjecture or assumption, but must be clearly shown, it being presumed that public boards do not abuse their discretion and act from proper motives and valid reasons; 55 C.J.S. Mandamus § 325, p. 559. Here because the record fails to disclose such clear evidence of improper motive, invalid reason, capriciousness or arbitrariness, the trial court's finding of abuse of discretion cannot be sustained.

■■■ Counsel agree that the Board of Trustees has the power to close the school, and the only problem remaining then is whether notice is required to be given under the provisions of I.C. § 33–522(b), amended by S.L.1955, Ch. 107 which reads:

"(b) The board of trustees of any reorganized school district * * * shall have the power to discontinue operation of any attendance unit situate within the boundaries of the district except * * * as hereinafter provided: * * *. If the board of trustees proposed to discontinue any attendance unit (1) which is located within the boundaries of what was a previously organized district which is now wholly situate within the boundaries of the reorganized district and (2) is an attendance unit which was maintained during the year previous

to such proposed discontinuance, the board of trustees must give notice of such proposed discontinuance not later than July 1 preceding the beginning of the term for which such discontinuance is to become effective. Such notice shall be posted and published in the same manner notices are required to be posted and published, set forth in section 33–905, Idaho Code, as amended.

"If five qualified electors of such previously organized district, at any time between June 1 and August 1, in any year shall petition the board of trustees for an election *within such previously organized district* on the question of *discontinuance of such previously organized district's attendance unit,* the board shall order an election to be held within ten days in such previously organized district and shall submit to the qualified school electors of such district a ballot which contains the following proposals:

"For Discontinuance of Attendance Unit

"Against Discontinuance of Attendance Unit

"If * two-thirds of the qualified electors of such previously organized district voting in such election shall vote against discontinuance of such attendance unit, the board of trustees of the reorganized district shall be without power to discontinue such attendance unit. * * *

"Discontinuance of any attendance unit within the meaning of this section shall mean no longer maintaining a school at the location where previously maintained." (Italics mine.)

Both counsel amicus and for appellant particularly emphasize the italicized portion of the statute, asserting the phrase "such previously organized district's attendance unit" limits the requirement of notice to the situation where a school had been operating in the previously organized district *at the time of the reorganization,* and later after reorganization such attendance unit is to be closed. Counsel further contend that where, as here, no attendance unit was in operation at the time of such reorganization such notice is not required, but that the board in their discretion may close such unit without any notice.

Counsel amicus also emphasizes the provision of the quoted section that notice of discontinuance "shall be posted and published in the same manner notices are required to be posted and published, set forth in section 33–905, Idaho Code, as amended". Applying the rule *expressio unius est exclusio alterius,* counsel amicus states "the expression that an election is to be held on

the question of discontinuance of 'such previously organized district's attendance unit' excludes that an election is to be held on the question of discontinuance of any other attendance unit. Therefore, unless the discontinuance is a matter upon which the electors may petition for election, notice of such intent accomplishes nothing, and would be equivalent to posting and publishing notice of tax levies, under Idaho Code § 33–905, fixed by the trustees within their statutory authority". I.C. § 33–905 authorizes the trustees to fix tax levies up to a stated limit. For levies above that limit, an election must be called, and the only notice required is when the board exceeds the limit of the levy authorized, and no notice is required when a levy is within the authorized limits.

Respondents contend, that the 1955 amendment controls discontinuance of all attendance units and expressly removed that provision which required that the attendance unit to be discontinued, should have been operating at the time of reorganization.

As originally adopted, this statute was a part of the school reorganization law, S.L. 1947, Ch. 111 § 22, and dealt with the powers and duties of the Board of Trustees of the districts, with no mention of closing of schools. This section was amplified in the succeeding session of the legislature (S.L.1949, Ch. 129) authorizing the trustees to discontinue certain previously existing at-

tendance units, and providing for the protection of patrons by requiring an election to be held upon petition. It was again amended in 1951 (S.L.1951, Ch. 247), by the addition of a proviso that no attendance unit shall be deprived of its class room unit status as a separate school or otherwise penalized in maintaining its attendance unit. And it was finally amended in 1955 to read as above set out.

I.C. § 33–522(b) has been before this court in its various forms in the following cases: 1952, Robbins v. Joint Class A. School District No. 331, 72 Idaho 500, 244 P.2d 1104, dealing with the 1949 and 1951 amendments, and required an election to be called upon proper petition; 1952, Andrus v. Hill, 73 Idaho 196, 249 P.2d 205, again dealing with 1949 amendment, defining the term "attendance unit"; 1955, Knight v. Class A School District No. 2, 76 Idaho 140, 278 P.2d 991, 992, dealing with 1949 amendment, and particularly the phrase "or have sold or removed any schoolhouse".

The law prior to the 1955 amendment (S.L.1951, Ch. 247) authorized boards of trustees to discontinue operation of attendance units in all cases except in those instances where the districts had voted or issued bonds or had sold or removed a schoolhouse or plants, with a limitation placed on them in the situation where an attendance unit had been maintained in full operation at the time of reorganization or in the school year

immediately preceding reorganization. This limitation required approval of the electors of the previously organized district to discontinue the attendance unit when proper petition was filed. The 1955 amendment eliminated the exception contained in the 1951 act of districts that had voted or issued bonds, or had sold or removed school houses or plants. The 1955 act further limited the power of discontinuance of an attendance unit

"(1) which is located within the boundaries of what was a previously organized district which is now wholly situate within the boundaries of the reorganized district and

(2) is an attendance unit which was maintained during the year previous to such proposed discontinuance,"

by providing for notice to be given of the board's proposed action.

█ In making these changes, the legislature certainly intended to change the previously existing law; State ex rel. Wright v. Headrick, 65 Idaho 148, 139 P.2d 761; State ex rel. Anderson v. Rayner, 60 Idaho 706, 96 P.2d 244. When a statute is amended, it is presumed that the legislature intended it to have a meaning different from that accorded to it before the amendment. Pigg v. Brockman, 79 Idaho 233, 244, 314 P.2d 609; 82 C.J.S. Statutes § 384(2), p. 904.

Accepting the theory of appellant and amicus would nullify the clearly expressed phraseology of the legislative enactment of the limitation, i. e., "any attendance unit (1) which is located within the boundaries of what was a previously organized district which is now wholly situate within the boundaries of the reorganized district and (2) is an attendance unit which was maintained during the year previous to such proposed discontinuance". No exception is therein contained that the limitation should apply only to units in operation at the time of reorganization. Nor is the contention of counsel amicus concerning the maximum *expressio unius est exclusio alterius* tenable, for it is based on the premises that the provision for notice contained in I.C. § 33–905 arise only when an election must be called. I.C. 33–522(b), however provides for the giving of notice "in the same manner notices are required to be posted and published, set forth in section 33–905, Idaho Code, as amended". This matter deals simply with procedure of posting and publication of notices, and not when they are required.

It is contended that respondents position *wholly nullifies the first paragraph of sub-division (b)* and that after creation of new schools "none of the newly created schools could be discontinued without an election", which is incorrect. The statute sets forth the procedure, first the decision to discon-

tinue, then the notice, and then if petitioned, an election (I.C. § 33–522(b), supra.).

This court in the case of Andrus v. Hill, supra, dwelt at length on the basic philosophy of the schools, and the traditional and historical background of this particular section, in order to arrive at the legislative intent of the amendment, stating at page 203 of 73 Idaho, at page 209 of 249 P.2d as follows:

"We must assume that this traditional element of local control of the schools was within and a part of the knowledge and thinking of the members of the legislature, and so assuming, we think this background sheds light on what the legislature intended by the 1949 amendment". What was stated in that case is again particularly applicable here, it being the clearly expressed intent of the legislature that a further control by the school patrons be given over the trustees on discontinuance of a school.

Judgment affirmed.

Costs to respondents.

TAYLOR, C. J., SMITH and KNUDSON, JJ., and BROWN, D. J., concur.

McQUADE, J., not participating.