629 P.2d 1153

James W. KOLP, Plaintiff-Appellant,

v.

**BOARD OF TRUSTEES OF BUTTE COUNTY JOINT SCHOOL DISTRICT NO. 111 and Ronald Lowe, Steve King, Jerry Pancheri, Marvin Jardine and Douglas Proctor, the members of said board, Defendants-Respondents.**

No. 13109.

Supreme Court of Idaho.

June 3, 1981.

Rehearing Denied June 3, 1981.

Byron J. Johnson, Boise, for plaintiff-appellant.

Richard T. St. Clair of St. Clair, Hiller, Wood & McGrath, Idaho Falls, for defendants-respondents.

DONALDSON, Justice.

Plaintiff-appellant James W. Kolp appeals the district court's denial of his request for a writ of mandamus compelling the Butte County School District No. 111 to reinstate him as a teacher for the district. We affirm in part and we reverse in part with a remand for further proceedings *de novo*.

Appellant Kolp was employed as a certificated employee of the Butte County School District No. 111. During his employment, the Junior High School principal, John Reilly, received parental complaints concerning the paddling of three children by Mr. Kolp. Mr. Reilly investigated those complaints and made a written request to Ron Lowe, Chairman of the Board of Trustees, requesting a board hearing on the matter.

Following a formal hearing, the board of trustees passed a motion and resolution for discharge and termination of the contract of appellant Kolp. A letter from the board chairman notified appellant of the decision to terminate his contract.

Following his dismissal, appellant filed a complaint in district court requesting a writ of mandamus for reinstatement as a teacher and attorney fees. The district court, following a review of the board proceedings, determined that the board of trustees had based its decision upon a finding that appellant's conduct was in violation of the district's past adopted Teacher's Handbook and in violation of the Code of Ethics of the Teaching Profession approved and published by the State Board of Education. The court found that the board was estopped from asserting the validity of the handbook as a basis for the teacher termination because of past failures to distribute, enforce and update the book. The court further found, however, that pursuant to statutory authority the board properly discharged the teacher for violation of the Code of Ethics. The court concluded that costs, including attorney fees, were not allowed to either party. Kolp appeals.

The role of the judiciary in settling teacher discharge disputes appears to be largely misunderstood. Contributing to this is that there is no specific statutory delineation of judicial appellate review for teacher dismissals made by the board of trustees of a school district. *See Bowler v. Board of Trustees*, 101 Idaho 537, 617 P.2d 841 (1980). This statutory absence leaves the teacher with but two methods of pursuing review: a mandamus application or a civil action for breach of the teacher's contractual, statutory or constitutional rights. The role of the judiciary is dependent upon which the teacher chooses to file. Today, in an effort to clear up some of the misunderstanding, we specifically address what the standard of review is to be when the choice is mandamus.

Quite recently, in the analogous area of mandamus proceedings brought against boards of county commissioners over zoning disputes, this Court clarified and restricted the standard of review of local board actions by holding that mandamus would lie to require action

"only when the party seeking the writ 'has a clear legal right to have an act performed[,] ... the officer against whom the writ is sought has a clear duty to act ... and ... the act be ministerial and not require the exercise of discretion.' *Saviers v. Richey*, 96 Idaho 413, 415, 529 P.2d 1285, 1287 (1974); *see* I.C. § 7–302."

*Wyckoff v. Board of County Commissioners*, 101 Idaho 12, 14, 607 P.2d 1066, 1068 (1980); *see Cooper v. Board of County Commissioners*, 101 Idaho 407, 614 P.2d 947 (1980) (Bakes, J., concurring opinion upon rehearing).

It has been long established that a local board's act of discretion is subject to an additional area of inquiry in a mandamus request. In reviewing an application brought to compel a board of trustees of a school district to reopen a school, this Court held:

"Proceedings of this nature for writ of mandate, are not available to review the acts of boards in respect to matters as to which they are vested with discretion, unless it clearly appears that they have acted arbitrarily and unjustly and in abuse of the discretion vested in them. 55 C.J.S. Mandamus § 133, p. 223. The school affairs in the districts being placed under the control and guidance of the trustees, it is necessary that a broad discretion be accorded them to exercise their authority efficiently. 47 Am.Jur. Schools, § 47, p. 328; *People ex rel. Ball v. Johnson*, 1950, 341 Ill.App. 423, 94 N.E.2d 444.

. . . .

"To establish capriciousness or arbitrariness on the part of a board requires more than conjecture or assumption, but must be clearly shown, it being presumed that public boards do not abuse their discretion and act from proper motives and valid reasons; 55 C.J.S. Mandamus § 324,

p. 559. Here because the record fails to disclose such clear evidence of improper motive, invalid reason, capriciousness or arbitrariness, the trial court's finding of abuse of discretion cannot be sustained." *Wellard v. Marcum*, 82 Idaho 232, 236, 351 P.2d 482, 483 (1960).[1] It has also been held that mandamus will lie only in those cases where there is not a plain, speedy and adequate remedy in the ordinary course of law. I.C. § 7–303; *District Board of Health v. Chancey*, 94 Idaho 944, 500 P.2d 845 (1972).

█ In the instant case, the district court did not restrict its review of the teacher dismissal as set out above. Rather, the court adopted a broader approach, acquiesced in by all parties, which examined the proceedings extensively to determine whether the local board action was substantially supported by the evidence and whether the ultimate decision was arbitrary and capricious. This Court is of the opinion that this broad approach was inappropriate because the use of mandamus to compel reinstatement presents but a limited opportunity for judicial review of a board's action.

We hold that the standard of review in a request for writ of mandate to compel reinstatement following a teacher termination by a school board is limited to an examination of whether the party seeking the writ has a clear legal right to have an act performed, and whether the action basically is ministerial, not discretionary. If discretionary, mandamus will not lie unless it clearly appears that the board has acted arbitrarily, unjustly and in abuse of discretion and there is not available other plain, speedy and adequate remedy in the ordinary course of law. On appeal to this Court, it is our task to apply this same standard, thereby constrained to the same limited review of the board's actions.

█ Initially, applying the above in the context of a teacher discharge case, we hold

---

1. It must be noted that 55 C.J.S Mandamus § 133 also provides that in a review based upon an allegation of abuse of discretion, not only must such abuse be clearly apparent but also "before the judiciary will interfere in such a case it must clearly appear that such officer [or school board] has so far departed from the line of his duty under the law that it can be said he has in fact so far abused such discretion that he has neglected or refused to exercise any discretion." *Id.* at 223–224. Thus, the standard of proof is high and this exception to the rule is severely limited. In the instant case, as pointed out *infra*, the standard has not been met.

that as regards the procedural aspects of a board's action, there is no alternate adequate remedy available and mandamus is a correct approach for expedient resolution of such matters if, of course, the other above listed limitations in review are also observed. We so hold because of the nature of the contractual relationship between a teacher and a school board as determined by both state and federal law which establish certain procedural requirements for teacher discharges. A tenured teacher cannot be discharged without a showing of cause. I.C. §§ 33–513(4), –1208, –1212, –1213, –1215; *Robinson v. Joint School District No. 150*, 100 Idaho 263, 596 P.2d 436 (1979); *Ferguson v. Board of Trustees*, 98 Idaho 359, 564 P.2d 971 (1977). Terms negotiated between a teacher's professional association and a school board are incorporated into existing teacher contracts. *Buhl Education Association v. Joint School District No. 412*, 101 Idaho 16, 607 P.2d 1070 (1980). Statutory rights are also embodied and implicitly included in a teacher's contract. *Robinson v. Joint School District No. 150, supra.* Before a teacher can be discharged, he must be given adequate notice of the charges and the hearing date, an opportunity to present his case at a formal hearing, and a statement of reasons for his discharge. *Bowler v. Board of Trustees, supra; Ferguson v. Board of Trustees, supra.* The due process clause of the fourteenth amendment to the United States Constitution provides an additional procedural overlay protecting the rights of a teacher. *Id.* A discharged teacher seeking to remedy an error regarding such procedures should have speedy legal recourse available to do so.

"Mandamus is a summary and expeditious writ to compel performance of an established duty, . . . and the party seeking it may well regard the immediacy of its availability as one of its primary virtues. The basis for seeking mandamus—that is, default in the performance of a duty—commonly will be apparent long before the fact and amount of damages can be established. It is likely that the aggrieved party will not wish to delay the decision on the issuance of the coercive writ until the issues relevant only to a damage claim can be tried."

*Heaney v. Board of Trustees*, 98 Idaho 900, 903, 575 P.2d 498, 501 (1978) (citations omitted). Thus, because the procedural requirements are so clearly delineated and expediency, otherwise unobtainable, is desirable, mandamus is an appropriate proceeding for reviewing the procedural aspects of the board's action.

■■ However, a teacher discharge usually can be separated into not only procedural but also substantive components, and it is quite a different matter when a discharged teacher seeks to remedy a substantive, rather than procedural error in the board's decision. Firstly, in determining whether there is sufficient cause to discharge a teacher, the school board is not performing a "ministerial" act, but is instead performing a statutory function which "require[s] the exercise of discretion" for which mandamus ordinarily will not lie. *Wyckoff, supra.* Secondly, the discharged teacher does have an adequate remedy at law for resolution of substantive error. He may bring an appropriate civil action for breach of his contractual statutory or constitutional rights. *See, e. g., Bowler, supra; see also, e. g., Rosecrans v. Intermountain Soap & Chemical Co. Inc.*, 100 Idaho 785, 605 P.2d 963 (1980). Thus, if the teacher is seeking to contest the action of the school board on the merits, a mandamus action is inappropriate.[2]

---

2. A mandamus action is inappropriate to contest a teacher discharge on the merits. This is not to say, however, that mandamus may never be used to review the substantive aspects of a decision by a board or officer. In those cases where there does not appear a plain, speedy and adequate remedy in the ordinary course of law, a mandamus proceeding may be the correct, if not the only remedy available. *See, e. g., Ready-To-Pour, Inc. v. McCoy*, 95 Idaho 510,

511 P.2d 792 (1973) (action to compel city to issue building permit); *Dist. Bd. of Health v. Chancey, supra*, (action to compel county board to fund a public health district); *Wellard v. Marcum, supra* (action to compel school superintendent and district to reopen school).

Additionally, as this Court noted in *Heaney v. Bd. of Trustees, supra*, the mandamus petition and the appropriate civil action may be joined

Having held that mandamus is appropriate to remedy those procedural errors for which there is not available other plain, speedy and adequate legal remedy, we now turn to the specific issues raised on this appeal. The first is whether the board's action was procedurally improper because the board failed to suspend the teacher prior to discharge as required by statutory authority and procedures prescribed by the State Board of Education. This is an area of inquiry well suited for resolution within the parameters of a mandamus proceeding.

The then applicable statute, I.C. § 33–513(4), 1976 Idaho Sess.Laws, ch. 86, p. 295, gave the board the powers and duties:

"To suspend, grant leave of absence, place on probation or discharge certificated professional personnel for continued violation of any lawful rules or regulations of the board of trustees or of the state board of education, or for any conduct which could constitute grounds for revocation of a teaching certificate. No certificated professional employee shall be discharged during a contract term except under procedures prescribed by the state board of education."

The State Board of Education Policy Manual for Public Schools provided in part:

"*307.2 PROCEDURE FOR SUSPENSION AND DISCHARGE OF CERTIFICATED PROFESSIONAL EMPLOYEES DURING CONTRACT TERM*

"The superintendent, acting as the authorized representative of the board of trustees, may suspend a certificated professional employee under contract by verbal notice which shall be reduced to writing not later than the succeeding day. Such suspension shall be limited to (1) continued violation of any lawful rules or regulations of the board of trustees or the state board of education, or (2) for any conduct which could constitute grounds for revocation of a teaching certificate.

"Suspension of an employee under contract shall precede discharge, and the salary of the suspended employee shall con-

tinue until such time as discharge is effected or the employee reinstated."

The district court noted in its memorandum opinion "that the Legislature granted the power to suspend, grant leave of absence, place on probation or discharge in the disjunctive. Nothing in the statute indicates that the school district *must* suspend a teacher before it is empowered to discharge that teacher." (Emphasis ours).

We agree with the district court that the controlling statute, I.C. § 33–513(4), is written in the disjunctive and does not mandate suspension prior to discharge. Moreover, the procedure prescribed by the State Board of Education in § 307.2 does not definitively mandate suspension prior to discharge in every case. Therefore, we affirm the district court's conclusion that suspension prior to discharge is not required and that there was substantial compliance with the relevant procedures prescribed by § 307.2 so as not to deprive the appellant of due process of law.

The remaining pertinent issues in this appeal center around the substantive question of whether there was sufficient cause to discharge the teacher. Appellant contends that the board failed to find the necessary degree of willful violation of the Code of Ethics, that portions of the code are unconstitutionally vague, that there is no substantial evidence to support the discharge and because there was insubstantial evidence, the board acted arbitrarily and capriciously in the discharge. Respondent raises in reply whether the district court incorrectly found that the corporal punishment regulation in the Teachers Handbook was not in full force and effect.

We find these remaining issues, including those concerning the handbook, to be inappropriate for consideration in a mandamus proceeding. The issues are substantive in nature, raising essential questions regarding the discretionary performance of the board's statutorily authorized function. Mandamus may lie to compel only ministe-

in one proceeding, that is, if the teacher seeks to contest both the procedural and substantive aspects of the board's action. However, they

are distinct claims, and the trial of the two issues may of necessity have to be severed.

rial acts; it may not lie to control the discretion of a board. *See Wyckoff, supra.* The limited inroad upon this rule, that mandamus may lie if there clearly has been an abuse of discretion, presents, as noted above in footnote one, a high standard of proof. Moreover, as has been pointed out, substantive issues generally are not appropriate areas of consideration in a mandamus proceeding and are to be considered only if other adequate legal remedy is unavailable.

Appellant contends that the board, which itself manifested acquiescence in the administration of corporal punishment, acted arbitrarily and capriciously in sanctioning him for using corporal punishment. This contention calls into question the substantiality of the evidence supporting the discharge and raises a substantive issue which may not be considered in mandamus unless, as set out in the preceding paragraph, no other adequate legal remedy is available.[3]

■ To sum up, as we held above, the standard of review in an application for writ of mandate to compel reinstatement following a teacher termination by a school board is limited to an examination of whether the party seeking the writ has a clear legal right to have an act performed and whether the action basically is ministerial, not discretionary. If discretionary, mandamus will not lie unless it clearly appears that the board has acted arbitrarily, unjustly and in abuse of discretion and there is not available other plain, speedy

and adequate remedy in the ordinary course of law. We note that the availability in teacher discharge cases of other appropriate civil actions would ordinarily preclude the substantive merits of the discharge from being raised by mandamus.

■ Accordingly, applying this standard to the facts before us, we find that the school board's action in discharging the appellant was based upon valid statutory authority, initially I.C. § 33–513(4), which delineated the requisite rights and duties of teacher and board; the board complied with the procedural technicalities of the discharge; and the discharge itself was an exercise of discretionary authority carried out in nonarbitrary manner. Based upon the foregoing, we find no procedural infirmity and we therefore affirm the district court's denial of the request for writ of mandate. To the extent the court conducted its review of the discharge proceedings in line with our application of the enunciated standard of review applicable in mandamus, the court did not err. To the extent the district court further looked into the substantive components of the teacher termination, the court did err. However, application of the proper standard of review, as set out above, provides sufficient support for the denial regardless of the district court's excursion into substantive issues.

■ This Court recognizes, however, that the parties and the court below, in

---

**3.** If the board without apparent cause had not exercised any discretion at all and simply arbitrarily sanctioned the appellant for his use of corporal punishment, a court, in consideration of a request for mandamus, if there were no other adequate remedy available, could properly intervene. In the instant case, however, the school board, in its letter of termination to Mr. Kolp, said:

"[Y]ou did administer corporal punishment beyond legitimate and prudent bounds upon students . . .

"Such behavior was judged inexcusable. An inability to successfully work specific curriculum requirements does not warrant physical abuse as a stimulus to academic achievement."

Moreover, the board had evidence before it, which it was entitled to believe, that one student was struck more than sixteen times, another more than ten times and a third about

eight times, such "paddling" having been administered for failure to work problems on a blackboard. Notwithstanding their personal views concerning physical punishment in the classroom, which the individual members expressed in voir dire prior to commencement of the termination hearing and, arguably, indicate a consensus that some degree of punishment was acceptable, the board, nonetheless, determined that Mr. Kolp's behavior went beyond any acceptable level.

This is not simply a matter of whether a board ministerially acted or failed to act or clearly abused its discretion. Appellant's contention that there was abuse calls into question whether the board, in a deliberated exercise of its discretion, was supported by evidence which presented sufficient cause to discharge. This is an area of substantive inquiry outside the general scope of mandamus.

good faith, failed to see the limited nature of mandamus and both procedural and substantive issues were argued and tried. We have disposed of the procedural issues. In the interests of justice, we remand that portion of the case dealing with the substantive issues to the district court with directions to grant a trial *de novo*.[4] Cf. *Cooper v. Board of County Commissioners, supra* (Bakes, J., concurring opinion upon rehearing).

That trial would present a proper forum for examination of the causes for the discharge. The teacher would have the burden of proof. The board's decision would not be binding on the court.

■ One further issue is before this Court pursuant to I.C. § 1–205 which directs that when a new trial is granted, this Court shall determine all pertinent questions of law presented. The district court held that the Teachers Handbook was invalid. The court stated that one reason the handbook was not in force and effect was because of the provisions of I.C. § 33–506, which the court interpreted as requiring that each board, annually, must make its own rules and regulations. This is an erroneous interpretation. Idaho Code § 33–506 grants the board the authority to make by-laws, rules and regulations for its government and that of the district. The section does not require annual exercise of this authority. Just as the state legislature does not annually re-write the Idaho Code, or even go through a formality of adoption of past law, so, too, a board of trustees need not do so. There is a continuity of rules and regulations duly enacted. The handbook provided validly enacted rules and regulations adopted by a past board pursuant to statutory authority and, as a matter of law, remained in effect. Any substantive argument, however, as to why the handbook should be deemed without effect would, of course, be an issue for consideration in the *de novo* proceeding.

4. While it is true that Kolp's complaint requested only relief by writ of mandamus, it is clear that the substantive aspect of the board's decision was at issue before the district court. Since that issue was tried with the implied, if not express, consent of the parties, the plaintiff

Denial of request for writ of mandate affirmed. The district court's disposition of matters outside the scope of review for mandamus, as set out above, is reversed. Case remanded for further proceedings in accordance herewith.

No costs. No attorney fees.

BAKES, C. J., and McFADDEN, J., concur.

SHEPARD, Justice, specially concurring.

I concur with the Court's disposition in affirming the denial of the writ of mandate. I applaud the efforts of the majority to clarify the role of the judiciary in teacher discharge disputes. I do not quarrel with the majority's conclusion that a petition for a writ of mandate may be an allowable remedy to one aggrieved by a board's failure to abide by statutory procedural guarantees.

However, the majority, in my opinion, continues the obfuscation of the function of a writ of mandate. The majority begins its analysis by noting the traditional and orthodox rule that mandamus will not lie unless the parties seeking it have a clear legal right to have a ministerial act performed by a person or body under a clear legal duty to perform the act. The writ will not lie to coerce or control discretion. That rule was set forth in *Allen v. Smylie*, 92 Idaho 846, 452 P.2d 343 (1969), and is based on many of the older Idaho cases cited therein and dates at least from *Pyke V. Steunenberg*, 5 Idaho 614, 51 P. 614 (1897).

Having announced the rule, the majority immediately proceeds to destroy it. The majority here expands the function of a writ of mandate beyond the inquiry as to whether the duty is clearly ministerial. If the duty requires the exercise of discretion, the majority would determine if that discretion has been exercised abusively, arbitrarily or unjustly. That same standard was

should be given leave to amend his complaint to incorporate an appropriate cause of action. I.R.C.P. 15(b) permits amendment of pleadings to include issues tried by express or implied consent, even after judgment.

sought to be imposed in *Pyke v. Steunenberg, supra,* by the dissenting Justice. That same argument was advanced in *Darby v. Pence,* 17 Idaho 697, 107 P. 484 (1910), but was there rejected by the Court stating:

"The correct rule as applied to this case was announced by Justice Field in the case of *Crowley v. Christensen,* 137 U.S. 86, 11 S.Ct. 13, 34 L.Ed. 620 as follows: 'The manner and extent of regulation rest in the discretion of the governing authority. That authority may vest in such officers as it may deem proper the power of passing upon applications for permission to carry it on, and to issue licenses for that purpose. It is a matter of legislative will only. As in many other cases, the officers may not always exercise the power conferred upon them with wisdom or justice to the parties affected. But that is a matter which does not affect the authority of the state.' "

The theory that mandamus may issue where the act involves the exercise of discretion and the discretion was exercised arbitrarily, unjustly or capriciously appears to have arisen in Idaho in the case of *Wellard v. Marcum,* 82 Idaho 232, 351 P.2d 482 (1960), without any consideration of the earlier Idaho cases, but in reliance solely upon Corpus Juris Secundum. I, too, must share the blame for the later continuance of that doctrine in *Wyckoff v. Board of County Commissioners,* 101 Idaho 12, 607 P.2d 1066 (1980).

Having now seen the error of my ways, I would observe that the function of a writ of mandate is to require the performance of a ministerial and non-discretionary act to which the petitioner has a clear legal right. It should not be used to review the exercise of discretion. It is argued that discretion is abused when it is exercised "unjustly," "capriciously," or "arbitrarily," and hence should be subject to review. If such is to be done, it should be accomplished by placing such specific authority in our courts, keeping in mind that thereby the courts become super (or perhaps supreme) school boards and super zoning authorities. In my judgment, it should not be done by perverting the function and purpose of the great and extraordinary writ of mandate.

BISTLINE, Justice, concurring and dissenting.

## I.

I am in agreement with that statement in the Court's opinion which recognizes that a discharged teacher is presently entitled to "bring an action for breach of contract seeking either monetary damages or reinstatement, or both." The statement is sound for the simple reason that it is well settled that there is a relationship between a school district and its teachers, and that relationship is one of contract. It is also well settled in this jurisdiction that there is but one form of civil action. An action predicated upon a contract and alleging its breach is such a civil action. It has long been the statutory law in Idaho that a writ of mandamus may issue in a civil action, and in that same civil action a jury may be impaneled to assess any damages which are claimed. For over 20 years now we have had notice pleadings which require a plaintiff to demand the judgment for the relief to which he deems himself entitled, which relief *may be in the alternative or of several different types.* Rule 8(a)(1)(3).

Mr. Kolp instituted a civil action. His allegations were sufficient to apprise the defendant school district that his claim was based on contract, and claimed breach thereof. In his prayer for relief Kolp sought reinstatement to his contractual position as teacher, and "such other and further relief as to the Court shall seem just and equitable,"—which certainly would be inclusive of monetary damages. It is true that in seeking reinstatement in his civil action he claimed reinstatement by way of mandamus. But it is equally true that "other just and equitable relief" could include the issuance of a mandatory injunction directing his reinstatement.

At oral argument, Kolp's counsel had scarcely commenced his presentation when confronted with a question from the bench asking if mandamus was here a proper remedy, although I do not see that this point was at all raised by extremely able counsel for the school district. Earlier decisions

from this Court certainly tended to indicate that it was proper. My own view at that time, and which has not changed since, was that the propriety issue was not before us, and in any event, although Kolp's specific use of the mandamus label was unfortunate (as the Court's opinion was to show), Kolp might still nevertheless be entitled to reinstatement—which would of necessity be in the form of a mandatory injunction. Other than a writ of mandamus, I know of no other way to compel a school district to reinstate a teacher than a mandatory injunction.

As I mention, the propriety issue has been raised by the Court, sua sponte, and we do not have the benefit of briefing and argument from counsel which, in my humble opinion, would be extremely valuable where the Court concludes it is in the public interest to develop some new rules of law. At the least the Court should have set the matter down for reargument; a more informed Court might have well resulted in a more unified opinion. At the best, however, the Court should accept the case in the posture in which it came to us. Both parties in proceedings below were represented by able counsel, and their contentions and evidence presented to an able trial judge. Error has been claimed,[1] and our review should be limited to passing on those con-

tentions. See *Matheson v. Harris*, 98 Idaho 758, 759, 572 P.2d 861 (1977): "We hear this case as presented to us by the parties and decline to rule on what outcome might be dictated under other legal theories." We should not reverse a trial court for his failure to follow rules which are only now being promulgated.

Probably there remains at least a vestige of a distinction between mandamus and mandatory injunctions since the simplification of the rules of pleading. The United States Supreme Court in *Stern v. South Chester Tube Co.*, 390 U.S. 606, 88 S.Ct. 1332, 20 L.Ed.2d 177 (1968), seemingly noted that the distinction might continue where the named defendant was a public officer rather than a private person. Whatever may be the answer in that regard, simplification of our rules of pleading does result in a plaintiff being allowed in a single civil action for breach of contract against a school district to seek, in addition to monetary damages, reinstatement under the mandamus provisions and, if not available there, under the general rules attendant to mandatory injunctions. Where, as here, Kolp's right to reinstatement was heard and determined, and the parties raised no distinction as to whether that remedy could be by way of mandamus as contradistin-

---

1. Other than claims for attorneys fees on appeal, the issues presented as stated by the parties were:

Appellant Kolp:

"1. Was the Board's discharge of the teacher improper because of the failure to suspend the teacher prior to discharge, with the required written notices, including the reasons?

"2. Was the Board's discharge of the teacher improper because the Board's decision failed to find that the teacher was in *wilful* violation of the Code of Ethics approved by the State Board of Education?

"3. Was the Board's discharge of the teacher for violation of the Code of Ethics improper because the specified portions of the code used by the Board in discharging the teacher were unconstitutionally vague?

"4. Was there substantial evidence to support the discharge of the teacher for violation of two standards of the Code of Ethics?

"5. Did the Board act arbitrarily and capriciously in discharging the teacher?"

Respondent School District:

I.

"Whether the District Court correctly found that the pre-discharge procedure utilized by the Board of Trustees accorded the Appellant due process of law.

II.

"Whether the District Court correctly found sufficient evidence before the Board of Trustees at the February 7, 1978 hearing to support the discharge of Appellant.

III.

"Whether the District Court correctly found that the corporal punishment provision in the Teachers Handbook was not in full force and effect in December, 1977.

IV.

"Whether the District Court correctly found that the Appellant had not waived the question of the Constitutionality of Idaho Code § 33–1208(h) by failure to plead it before trial, or asserts it timely after the trial.

V.

"Whether the District Court correctly found Idaho Code § 33–1208(h) constitutional."

guished from mandatory injunctive relief, I submit only that we should decide the case as we received it, saving for another day and another case the resolution of the issues today so laboriously undertaken by three members of the Court without the benefit of any briefing or argument from counsel involved or from interested parties who might come in as *amicus curiae* if afforded the opportunity.

## II.

Much of what is contained in the Court's opinion is overly broad and in sharp contrast to what the law may have been thought to be. Shortness of time, and unwillingness to indulge in the reshaping of the law, without the benefit of counsel's briefing and argument, precludes me from other than offering the following as mere thoughts which may be developed on the petition for rehearing which will surely follow.

The Court today, by limiting the standard of review in what it terms a mandamus action,[2] has vitiated all judicial review of discretionary decisions where no other adequate legal remedy exists.[3] The fears of such uncontrolled discretion were well expressed in *St. Joseph Stock Yards Co. v. United States*, 298 U.S. 38, 56 S.Ct. 720, 80 L.Ed. 1033 (1936):

> "Legislative agencies, with varying qualifications, work in a field peculiarly exposed to political demands. Some may be expert and impartial, others subservient. It is not difficult for them to observe the requirements of law in giving a hearing and receiving evidence. But to say that their findings of fact may be made conclusive where constitutional rights or liberty and property are involved, although the evidence clearly establishes that the findings are wrong and constitutional rights have been invaded, is to place those rights at the mercy of administrative officials and seriously to impair the security inherent in our judicial safeguards. That prospect, without multiplication of administrative agencies, is not one to be lightly regarded." *Id.* at 52, 56 S.Ct. at 726.

While it may be that this Court once expressed the view that agencies were vested with absolute discretion not subject to judicial review through mandamus,[4] there is no longer any justification for such a rule, either from a historical analysis or from a logical examination. First, the historical foundations which led to this ministerial/discretionary dichotomy are no longer valid:

> "The opinion makes clear . . . that the real motivation for the decision [that the courts will not review discretionary decisions] was the idea that judicial review of an exercise of administrative discretion was undesirable. The Court was actuated by something other than mandamus doctrine when it said: 'The Court could not entertain an appeal from the decision of one of the Secretaries, nor revise his judgment in any case where the law authorized him to exercise discretion, or judgment. . . . The interference of the Courts with the performance of the ordinary duties of the executive departments of the government, would be productive of nothing but mischief; and we are quite satisfied that such a power was never intended to be given to them. Upon the very subject before us, the interposition of the Courts might throw the

---

2. The Court today holds in its footnote 1 that the officer must have "so far departed from the line of his duty . . . that it can be said he has in fact so far abused such discretion that he has neglected or refused to exercise any discretion." This standard is much more stringent than the arbitrary, capricious, discriminatory or abuse of discretion standard used in the past, *see, e. g., Allen v. Smylie*, 92 Idaho 846, 452 P.2d 343 (1969); *Wellard v. Marcum*, 82 Idaho 232, 351 P.2d 482 (1960), and it would be a rare case indeed where such a standard could be met. Indeed, this standard seemingly rein-

states the ministerial requirement advocated by Justice Shepard.

3. This would apply mainly to local board decisions which do not fall under the A.P.A.

4. The confusion surrounding this question was evident as far back as *Darby v. Pence*, 17 Idaho 697, 107 P. 484 (1910). Although the Court in that case held that it was bound by the council's decision, it cited and quoted several cases which had held that mandamus would lie to control an abuse of discretion.

pension fund, and the whole subject of pensions, into the greatest confusion and disorder.' [*Decatur v. Paulding*, 39 U.S. (14 Pet.) 497, 515–16, [10 L.Ed. 599] (1840)]

"In thus developing the foundations of mandamus doctrine in 1840 the Court was assuming that either the Secretary would make the final determination or the reviewing court would substitute its judgment. The choice was between de novo review and no review. The Court did not know what we know now—that interference by courts to the extent of interpreting statutes for the purpose of keeping administrative officers within their lawful authority is not productive of mischief but can be a cardinal feature of a highly successful system of dividing functions between administrative officers and reviewing courts. Today we know that we do not have to choose between de novo review and no review.

"The early development of the ministerial-discretionary distinction was thus founded upon a basic assumption which later experience has proved to be false. Yet the federal courts today are still generally following the law founded upon the false assumption, without making any significant effort to reformulate the law to take account of modern experience." 3 Davis on Administrative Law § 23.11 at 352.

Secondly, the absurdity of a literal application of the ministerial requirement is evident, as demonstrated by the first decision of this Court which considered the issue, *Pyke v. Steunenberg*, 5 Idaho 614, 51 P. 614 (1897). The Court in *Pyke*, in a two-to-one decision, held that the board of examiners had an *absolute* discretion to grant or deny claims against the state. Chief Justice Sullivan disagreed:

"The fact of the legality of the claims is admitted. It then becomes their ministerial duty to allow them. They then have no discretion to capriciously, arbitrarily, or wantonly disallow them.... The discretion given must be governed by honesty, not by humor or prejudice." *Id.* at

626, 51 P. at 618 (Sullivan, C. J., dissenting).

In *Jewitt v. Williams*, 84 Idaho 93, 369 P.2d 590 (1962), a unanimous Court overruled *Pyke* and adopted Chief Justice Sullivan's dissent. The Court held that allowing such absolute discretion would make the board the supreme authority in the state, beyond the control of even the legislature. The Court concluded that where there is no question as to form, certification and chargeability of a claim, the board must examine and approve such a claim.

This case demonstrates the dangers of vesting absolute discretion in boards or officers. It also demonstrates the amount of effort that the courts must expend in trying to fit a case within the "ministerial" category in order to reach a decision on the merits and correct an obvious abuse—in 1897 the Court held the acts to be discretionary, but in order to reach the merits in 1962 the acts were classified as ministerial. As stated in one article, "there are few ... administrative determinations that do not involve an element of discretion and few that are wholly discretionary." Byse & Fiocca, Section 1361 of the Mandamus and Venue Act of 1962, 81 Harv.L.Rev. 308, 333 (1967). The ministerial/discretionary dichotomy serves only to confuse the issue and avoid meaningful judicial review, and it has been almost universally criticized. *See, e. g.,* 3 Davis on Administrative Law § 23.11 (1958); L. Jaffe, Judicial Control of Administrative Action 181–83 (1965); *Byse & Fiocca, supra*; Mandamus in Administrative Actions: Current Approaches, 1973 Duke L.J. 207.

Discretionary decisions should not be placed beyond the scope of meaningful judicial review because of an antiquated distinction or because of a legislative oversight in failing to provide for judicial review in specific instances. As an example, before 1975 the only method of reviewing zoning decisions was via mandamus. Under the standard enunciated today, local boards would have had almost absolute discretion on zoning matters.[4] This Court would do

___

4. An argument can be made that such absolute discretion would violate due process. The

Court went to great lengths in *Cooper v. Board of County Commissioners*, 101 Idaho 407, 614

well to remember what it said in *Cooper v. Board of County Commissioners*, 101 Idaho 407, 614 P.2d 947 (1980):

"The shield from meaningful judicial review which the legislative label provides is inappropriate in these highly particularized land use decisions. The great deference given true legislative action stems from its high visibility and widely felt impact, on the theory that appropriate remedy can be had at the polls.... This rationale is inapposite when applied to a local zoning body's decision as to the fate of an individual's application for a rezone.... Only by recognizing the adjudicative nature of these proceedings and by establishing standards for their conduct can the rights of the parties directly affected, whether proponents or opponents of the application, be given protection." 101 Idaho at 410, 614 P.2d at 950.

Analogously, the shield from meaningful judicial review provided by the label "discretionary" is often inappropriate, and could well lead to far greater abuses than any feared abuses from judicial overstepping. Judicial review is a necessary adjunct to local decision-making; without it, local decisions, no matter how erroneous, will go unchallenged. While the initial decision must rest in the discretion of the local bodies, the courts must stand ready to protect the rights of those suffering from arbitrary decisions.

The proper standard of review from a discretionary decision in a mandamus proceeding where there is no other adequate legal remedy is whether it clearly appears that the conduct is arbitrary, capricious, discriminatory or an abuse of discretion.[5] *See, e. g., Wyckoff v. Board of County Commissioners*, 101 Idaho 12, 607 P.2d 1066 (1980). *Ready-To-Pour, Inc. v. McCoy*, 95 Idaho 510, 511 P.2d 792 (1973); *Allen v. Smylie*, 92 Idaho 846, 452 P.2d 343 (1969); *Wellard v. Marcum*, 82 Idaho 232, 351 P.2d 482 (1960). If this Court will not provide for meaningful judicial review of local discretionary decisions, then the task falls on the legislature.[6] In this connection I would recommend that the legislature specifically provide for the type of judicial review it desires for any decision-making that does not fall under the Administrative Procedure Act.

### III.

It must be noted that the new trial ordered to be had will not be one in the nature of a judicial review, *e. g.*, as in reviews brought under I.C. § 31–1509. *See Cooper v. Board of County Commissioners, supra* 101 Idaho at 414–415, 614 P.2d at 954–55 (Bakes, J., concurring in part). This new trial will be as if Kolp had simply brought a breach of contract action. In effect, the Court declares itself to be simply acting in the interests of justice, with the self-justification that the substantive issues have already been once tried with the consent of the parties.[7] It would also be in the interests of the administration of justice, however, for this Court to decide the case now since neither party has questioned the stan-

P.2d 947 (1980), to point out the procedural requirements mandated by due process in a quasi-judicial decision. It would be passingly strange if another board in another quasi-judicial decision where there is no other judicial review could provide all these procedural safeguards but then render an absolutely arbitrary and erroneous decision.

5. This standard of review would not apply to truly legislative decisions, of course, where the only question would be whether the board had exceeded the scope of its authority.

6. The legislature may wish to consider placing local boards under the judicial review provisions of the Administrative Procedure Act.

7. The majority's citation to Rule 15 to support the remand for a trial de novo is perplexing. Rule 15(b) allows the pleadings to be amended to conform to the evidence produced at trial, even after judgment, so that the pleadings will conform to the issues actually tried. It does not provide for an amendment to the pleadings after judgment to be followed by a new trial in conformance with the new pleadings.

As to the majority's citation to Justice Bakes' concurrence in *Cooper*, Justice Bakes' discussion of I.C. § 31–1509, while highly enlightening as to his considered point of view, has nothing to do with this case.

dard of review. The elucidation offered by the Court today will greatly affect future cases; it should not be used to burden a case that has already come this far without being challenged.

Nonetheless, if the Court stands determined to apply this strict standard of review, the Court should at least be consistent by simply affirming the denial of the writ of mandate with a note that this in no way precludes Kolp from bringing a breach of contract action, per *Heaney v. Bd. of Trustees*, 98 Idaho 900, 575 P.2d 498 (1978).

### IV.

This leads to my final area of concern—the weight to be given the decision of the Board. In a mandamus proceeding, or in an A.P.A. review, the decision of the Board would be given considerable weight, *i. e.*, the question would be whether the Board had abused its discretion. In a contract action, however, under the standard enunciated by this Court, the decision of the Board is entitled to absolutely no presumptive weight.[8] The Board is simply one of the parties to the contract. Whether the Board breached its contract will be determined by the finder-of-fact as an initial matter, without any deference to the discretion of the Board. While I believe this result is correct under current law, it raises substantial policy issues that the legislature may wish to consider.

The legislature in I.C. § 33–513 carefully provided procedural due process to teachers threatened with dismissal. The legislature did not, however, explicitly provide a means of judicial review of the Board's decision. By holding that the proper method to test the substantive decision is through a breach of contract action, this Court is placing the power over hiring and firing teachers in the courts rather than in the school boards. A court and a school board may have different

views on what constitutes "just cause," and, in spite of the elaborate procedural safeguards imposed upon the Board, the Board's decision is totally meaningless when the issue goes before the court. It is for the legislature, not the Court to decide where dismissal decisions should be made.[9]

As I say above in Part I, in another day, and in another case, and the legislature still abstaining, the Court may have to meet the issues it prematurely tackles today—without the help it ordinarily receives, needs and appreciates.

---

8. For example, the district court noted in its opinion that the Board could have believed the students' version of how many times they were hit, rather than the teachers. But in a contract action the trier-of-fact will determine whom to believe, and if the factfinder chooses to believe the teacher, then the question will be whether there was just cause to fire him for hitting the children six times. There will be no deference

given to the Board's decision to believe the students and consider whether there was just cause given that he hit the students sixteen times.

9. The legislature could provide that all teacher contracts incorporate a provision providing for a specific type of judicial review.