656 P.2d 753

**Leslie KNUDSON, Plaintiff-Appellant,**

v.

**BOUNDARY COUNTY SCHOOL DISTRICT NO. 101, Board of Trustees of Boundary County School District No. 101, and Leonard Kucera, Jr., Ray Dinning, Irma Clark, Joe Richardson and Harold Stephenson, the members of said board, Defendants-Respondents.**

**No. 13732.**

Court of Appeals of Idaho.

Dec. 29, 1982.

Byron Johnson, Boise, for plaintiff-appellant.

Peter B. Wilson, Wilson & Walter, Bonners Ferry, for defendants-respondents.

BURNETT, Judge.

We are asked to decide whether a local school board should be compelled to re-employ a teacher whose contract was not renewed after her first year of service. Leslie Knudson began teaching in the Boundary County school district on August 30, 1978. By mid-September she encountered student behavior problems, and later that month one of her seventh grade classes staged what she called a "rebellion." As the academic year progressed, Ms. Knudson's teaching was evaluated by the school principal. In the spring of 1979, the principal noted that Ms. Knudson still needed to "work at classroom control," but characterized her general performance as "satisfactory." He recommended that she be rehired for a second year.

However, a divided school board declined to follow the recommendation. Responding to parental complaints, and citing a perceived need for "a more constructive teacher-student relationship" in the classroom, three of the five school board members voted to deny a second-year contract. The teacher brought this action, seeking a writ of mandate to compel the school board to rehire her. She contended that the school district should have put her on probation before deciding not to renew her contract. The court below entered summary judgment in favor of the school district. We affirm.

## I

The scope of our review is limited by two constraints. First, because this is an appeal from a summary judgment, we need determine only whether there are genuine issues of material fact, and whether the school district is entitled to judgment as a matter of law. I.R.C.P. 56(c). The teacher has conceded that the material facts are not in dispute. It remains for us to decide whether the judgment was correct as a matter of law.

The second constraint is more subtle. It arises from the nature of relief sought by the teacher. A writ of mandate may be obtained, to compel administrative action, only when the party seeking the writ "has a clear legal right to have an act performed [,] . . . the officer against whom the writ is sought has a clear duty to act . . . and . . . the act [does] not require the exercise of discretion." *Saviers v. Richey,* 96 Idaho 413, 415, 529 P.2d 1285, 1287 (1974); *see* I.C. § 7–302. Applying this general standard to a case where a discharged teacher sought reinstatement, our Supreme Court recently held (a) that judicial review was limited to determining whether the teacher had a "clear legal right" to reinstatement; and (b) that if the act of reinstatement were discretionary with the school board, a writ of mandate would not issue unless the board had discharged the teacher "arbitrarily, unjustly and in abuse of discretion. . . ." *Kolp v. Board of Trustees,* 102 Idaho 320, 323, 629 P.2d 1153, 1156 (1981).[1]

We believe the present case commands a scope of review even narrower than that described in *Kolp.* Where—as here—a teacher seeks a writ of mandate, not for reinstatement during the term of a contract, but to compel continued employment after a first-year contract has expired, review is limited to determining whether the teacher has a clear legal right to the relief sought. The judicial inquiry does not extend, as it did in *Kolp,* to whether the school board acted "arbitrarily, unjustly and in abuse of discretion." The scope of review is narrowed, in the type of case before us, because there are two categories of public school teachers in Idaho. Teachers who have served three or more consecutive years in the same school district are entitled to "automatic renewal" of their contracts each year, unless the school board determines that, for "just and reasonable cause," a contract should not be renewed. I.C. §§ 33–1212, 1215. Teachers like Leslie Knudson, with fewer years of service, have no such expectancy of continued employment from year to year.

The second part of the holding in *Kolp* —referring to abuse of discretion by a school board—reflects a broadening of the focus of mandamus proceedings in response to claims that legally cognizable interests have been wrongfully denied or impaired. *See, e.g.,* the claims asserted in *Wellard v. Marcum,* 82 Idaho 232, 351 P.2d 482 (1960), and in cases compiled at 55 C.J.S. *Mandamus* § 133 (1948), cited with approval in *Kolp.*

No such broadening of the focus is necessary in the present case. The teacher here has no substantive *entitlement* to a second-year employment contract; and she claims no deprivation of due process in connection with any such entitlement. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Loebeck v. Idaho State Board of Education,* 96 Idaho 459, 530 P.2d 1149 (1975); *compare Robinson v. Joint School District No. 150,* 100 Idaho 263, 596 P.2d 436 (1979). Rather, she urges that

---

1. The second part of the *Kolp* holding substantially modifies the first part. *See* opinion of Shepard, J., specially concurring, 102 Idaho at 327, 629 P.2d at 1160. The second part implicitly suggests that, in some circumstances, one may be deemed to have a "clear legal right" to performance of a "discretionary" act. It also suggests that, although discharge and reinstatement are conceptually different "acts," an abuse of discretion in the former may be grounds for mandamus to compel the latter. However, we need not apply the second part of the *Kolp* holding to the instant case. As explained *infra,* the teacher here does not seek review of the merits of the board's discretionary decision not to re-employ her. Moreover, in a re-employment case, there is a conceptual identity between the school board's action (denial of a new contract) and the act sought to be mandated (issuance of the new contract).

the school board be compelled to afford her a second-year contract as a *remedy* against the board's failure to comply with an asserted statutory requirement of probation before deciding not to re-employ her. Consequently, we have no occasion to consider whether, in light of the teacher's performance, the school board acted "arbitrarily, unjustly and in abuse of discretion." We consider only whether the teacher had a "clear legal right" to probation as a prerequisite to the board's decision not to renew her contract.

## II

The teacher's claim of a right to probation is based upon I.C. § 33–513(6).[2] Section 33–513 generally enumerates the powers and duties of school boards with respect to professional personnel employed by the school districts. Subsection (6) relates specifically to teachers who have not completed three successive years of service and who, therefore, have no continuing entitlement to employment from year to year.

When this subsection originally was enacted in 1973, it required school boards "[t]o develop guidelines and procedures for the supervision and evaluation" of such teach-

ers. It directed school boards to notify the teachers by May 15 whether they would be re-employed during the next school year. It further provided that if a decision had been made not to re-employ a teacher, the notice would contain a statement of reasons, and the teacher would be entitled to an "informal review" of the decision. 1973 Idaho Sess.Laws, ch. 126, § 1, p. 241. As part of the same bill, the Legislature also amended another statute, I.C. § 33–1212, which relates to teachers with automatically renewable contracts. The following language was added to § 33–1212:

> Before a board of trustees can determine not to renew the contract of ... [a teacher] whose contract would otherwise be automatically renewed, or to renew the contract of any such person at a reduced salary, such person shall be entitled to a probationary period.... [1973 Idaho Sess.Laws, ch. 126, § 2, pp. 242–43.]

No comparable language was included in § 33–513(6).

In 1975 the Legislature's attention again turned to § 33–513(6). The statute was amended by substituting the phrase "establish criteria" for "develop guidelines." The Legislature also added the requirements

---

**2.** The statute originally was codified as I.C. § 33–513(4). It had been renumbered § 33–513(5) when this action was filed. 1976 Idaho Sess.Laws, ch. 86, § 2, pp. 293, 295–96. Subsequent to this action, it was again renumbered § 33–513(6) without change in language. 1981 Idaho Sess.Laws, ch. 311, § 1, p. 653. In this opinion, we refer to the statute as § 33–513(6). It presently provides as follows:

> The board of trustees of each school district ... shall have the following powers and duties:
>
> \* \* \* \* \* \*
>
> 6. To establish criteria and procedures for the supervision and evaluation of certificated employees who are not employed on a renewable contract, as provided for in section 33–1212, Idaho Code. Such procedures shall require at least one (1) evaluation prior to the beginning of the second semester of the school year, and when any such teacher's work is found to be unsatisfactory a probationary period shall be established which shall continue until the time for the reissuing of the yearly contract as provided in this paragraph. Notwithstanding the provisions of sections 67–2344 and 67–2345, Idaho

> Code, a decision to place certificated personnel on probationary status may be made in executive session and the individual placed on probation shall not be named in the minutes of the meeting. A record of the decision shall be placed in the teacher's personnel file. This procedure shall not preclude recognition of unsatisfactory work at a subsequent evaluation and the establishment of a reasonable period of probation. In all instances, the teacher shall be duly notified in writing of the areas of work which are deficient, including the conditions of probation. Until the third year of continuous employment by the same school district, including any specially chartered district, each such certificated employee shall be given notice, in writing, whether he will be reemployed for the next ensuing year. Such notice shall be given by the board of trustees no later than the fifteenth day of May of each such year. If the board of trustees has decided not to re-employ the certificated employee, then the notice must contain a statement of reasons for such decision and the employee shall, upon request, be given the opportunity for an informal review of such decision by the board of trustees.

that the teachers governed by this subsection be evaluated prior to the beginning of the second semester of the school year, and that "a probationary period" be established "when any such teacher's work is found to be unsatisfactory." 1975 Idaho Sess.Laws, ch. 256, § 1, p. 701. Following enactment of the 1975 amendments to § 33–513(6), the school district in this case adopted policies providing that teachers be evaluated by staff in December of each year; that teachers with deficient performance be put on probation; and that summaries of evaluation reports be furnished to the school board each May, for consideration in re-employment decisions.

This case turns upon the meaning of the 1975 amendments and of the school district policies adopted thereunder. The teacher has contended that the statutory requirement of probation for unsatisfactory work, and the inclusion of probation in the school district's policies, demonstrate an intent to give a teacher the benefit of probation before the school board denies re-employment for any performance-related reason. The argument is intuitively appealing. But the problem with the teacher's contention is that the 1975 amendments to § 33–513(6) stopped short of stating explicitly what the 1973 amendment to § 33–1212 had said— that a school board is prohibited from deciding not to renew a teacher's contract unless the teacher first has been afforded a probationary period.

The district court, in granting summary judgment to the school district, relied entirely upon the lack of a linguistic connection between probation and the re-employment decision in § 33–513(6). The district judge simply took the statute as he found it, adding nothing to its literal terms by judicial construction. This restrained approach is proper where the statute is unambiguous and clearly expresses the intent of the Legislature. *E.g., Swensen v. Buildings, Inc.,* 93 Idaho 466, 463 P.2d 932 (1970).

However, in our view, § 33–513(6) is not such a statute. The purpose served by the statutory requirement of probation is not clear. Probation is not expressly tied to the re-employment decision; and the statute, on its face, recites no other purpose that can be ascribed to it. Yet the requirement of probation must serve some purpose. The language of a statute will be interpreted, if possible, to give force and effect to each of its provisions. *E.g., Stucki v. Loveland,* 94 Idaho 621, 495 P.2d 571 (1972). Consequently, we believe that § 33–513(6) does not speak entirely for itself. It must be judicially construed.

There are many starting points and conflicting directions in statutory construction. *See* Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons about How Statutes Are to be Construed,* 3 Vand.L.Rev. 395, 401–06 (1950). However, it is generally accepted that the primary goal should be to ascertain and to effectuate the legislative intent. *See, e.g.,* Levi, *An Introduction to Legal Reasoning,* 15 U.Chi.L.Rev. 501, 520–23 (1948); Holmes, *The Theory of Legal Interpretation,* 12 Harv.L.Rev. 417, 419 (1898). The Idaho Supreme Court has embraced this objective. *E.g., Local 1494 of the Int'l Ass'n of Firefighters v. City of Coeur d'Alene,* 99 Idaho 630, 586 P.2d 1346 (1978).

Indicia of legislative intent may be "collected from the context [of a statute], from the occasion and necessity of the law, from the mischief felt, and the remedy in view." *Noble v. Glenns Ferry Bank, Ltd.,* 91 Idaho 364, 367, 421 P.2d 444, 447 (1966), *quoting from Offield v. Davis,* 100 Va. 250, 40 S.E. 910, 912 (1902). In this case the "occasion," or context, of enactment of the 1975 amendments to § 33–513(6) may be summarized in tabular form. When the Legislature convened in 1975, the statutory rights of teachers, faced with nonrenewal of their contracts, formed this pattern:[3]

---

**3.** A different pattern exists with respect to discharge of a teacher during the term of his or her contract. *See, e.g., Bowler v. Board of Trustees,* 101 Idaho 537, 617 P.2d 841 (1980).

| | Notice | Hearing | Reasons | Cause Required | Probation Required |
|---|---|---|---|---|---|
| Teachers with three or more years of service and "automatically renewable" contracts under § 33–1212 | YES § 33–1213 | YES § 33–1213 | YES §§ 33–1212, 1213; 33–513(5) | YES § 33–1215 | YES § 33–1212 |
| Teachers with less than three years of service, holding yearly contracts governed by § 33–513(6) | YES § 33–513(6) | NO ("informal review") § 33–513(6) | YES § 33–513(6) | No Provision | No Provision |

Thus, by 1975 the Legislature had established a full complement of statutory rights for teachers with automatically renewable contracts, but had afforded fewer rights to teachers with yearly contracts. The Legislature was under no constitutional compulsion to do more for teachers in the latter category. *Board of Regents v. Roth, supra.*

What, then, was the "necessity," or "mischief felt," which moved the Legislature to amend § 33–513(6) in 1975? A "Statement of Purpose" which accompanied the amendatory legislation, when it was introduced in the House of Representatives, is illuminating:[4]

[These amendments provide] a better framework for the supervision and evaluation of the performance of teachers in Idaho who are not employed on a renewable contract.

As the law now stands, there are no criteria or minimum standards that local school boards must follow in developing guidelines and procedures for such supervision and evaluation. At least one district court in Idaho has held that the existing language of Section 33–513(4) is too uncertain and lacking in criteria and minimum standards to be enforceable. This bill attempts to cure that deficiency.

This bill provides for not less than one annual evaluation of all teachers who are not employed on a renewable contract. If a teacher's work is found not to be satisfactory, then the teacher must be notified in writing by February 1 of the alleged deficiencies, together with recommendations for improvement. Thereafter, the teacher will be on probation until May 15 to demonstrate improvement in the stated areas of deficiency.

These new provisions should cure the questions that have been raised about the enforceability of the statute as it now stands.

This "Statement of Purpose" reveals that drafters of the 1975 amendments perceived difficulty in securing compliance by local

---

4. The amendatory legislation underwent some drafting changes in the course of enactment, but none of the changes altered the apparent purpose of the legislation. *Compare* House Bill No. 237 (Idaho Legislature, 1975 Sess.) *with* 1975 Sess.Laws, Ch. 256 § 1, p. 701.

school boards with the Legislature's charge in 1973 to "develop guidelines and procedures" for evaluation of teachers who did not have automatically renewable contracts. The "remedy in view" was to substitute the more definitive words "establish criteria" for "develop guidelines," and to require probation for deficient performance, in order to strengthen the mandate for evaluation of teachers during their first three years. The "Statement of Purpose" discloses no legislative intent to restrict the power of a school board, in regard to re-employment decisions, by making probation a prerequisite to denial of a contract for the next academic year. In contrast, when the Legislature in 1973 amended § 33–1212, to require probation before nonrenewal of any contract of a teacher with three or more years of service, the "Statement of Purpose" accompanying the bill was as explicit as the legislation itself:

> The renewable contract [statute] is also amended to provide that a person who is entitled to a renewable contract is entitled to a probationary period before the board decides not to renew his contract or to reduce his salary.

 We conclude that when the Legislature amended § 33–513(6) in 1975, it intended to impart more structure to the teacher evaluation process previously mandated. However, the Legislature did not intend to forge a direct link between probation during the school year and the decision by a school board whether to issue a contract for the next year. Under our construction the requirement of probation, for deficient teacher performance, provides a specific procedural corollary to a general legislative mandate for teacher evaluation programs. It also serves as a therapeutic mechanism for correcting serious teaching deficiencies during the school year. Thus, probation—or the lack of it—may be an important factor in a school board's re-employment decision at the end of the school year. But it does not dictate the result of that decision.

 It has been argued that if failure to put a teacher on probation affords no basis

to compel the school district to re-employ the teacher, then the requirement of probation cannot be "enforced." The underlying hypothesis of this argument is that the Legislature intended to create a vested right to probation as a prerequisite to denial of a contract for the next school year. That hypothesis merely restates the issue in this case. We are not persuaded that the Legislature intended to create such a right. Moreover, the argument confuses the means and the end of § 33–513(6). Nothing in our analysis of the statute suggests that the Legislature intended probation to be an end in itself, enforced through contract suits by individual teachers. Rather, the Legislature intended the probation requirement to be a means of securing compliance by school districts with the mandate for teacher evaluation programs. The school district in this case conducted such a program. That which the Legislature sought to "enforce" has been achieved.

Our conclusion is consistent with the policies adopted by the school board pursuant to § 33–513(6). The policies comprise an administrative interpretation of the statute, and they represent an extrinsic aid to construction. *E.g., Kopp v. State,* 100 Idaho 160, 595 P.2d 309 (1979). Under those policies, teacher evaluations are conducted during the academic year, and probation periods are imposed and supervised, by the school district's administrative staff—primarily the school principals. Re-employment decisions are, and must be, made by the school board. To constrain the school board's decisions by the actions of the school district staff would represent a diminution of school board authority plainly not contemplated in the school district's policies and not required by § 33–513(6).

Our decision preserves the authority of the school board to determine, upon all information available to the board in May of each year, whether a teacher should be re-employed. The board may consider all such information even though the administrative staff—based upon facts available to them earlier in the year—may not have known about certain deficiencies in the teacher's

performance or, for any other reason, may not have imposed a period of probation. Accordingly, we hold that the first-year teacher in this case had no "clear legal right" to probation as a prerequisite to denial of a contract for the second year.

We have reviewed at length the decisions from other jurisdictions, cited by both parties. These decisions construe statutes that differ materially, in language and in history, from the Idaho statutes. Consequently, we have not relied upon them in construing § 33–513(6), and we deem it unnecessary to discuss them here.

The judgment of the district court, refusing to issue a writ of mandate, is affirmed. Costs to respondents.

WALTERS, C.J., and SWANSTROM, J., concur.