971 P.2d 323

Allison GILMORE, Karen Remsen, Nona Stafford, Doug Vann and Enid Trenholm, Plaintiffs–Appellants,

v.

BONNER COUNTY SCHOOL DISTRICT NO. 82, Defendant–Respondent.

No. 23824.

Supreme Court of Idaho, Coeur d'Alene, September 1998 Term.

Jan. 11, 1999.

John E. Rumel, Boise, argued for appellants.

Dodson & Raeon, Coeur d'Alene, for respondent. Charles M. Dodson argued.

WALTERS, Justice.

## NATURE OF THE CASE

This case involves the authority of a school building principal to enter into employment contracts on behalf of the school board. Four Sandpoint Junior High teachers, who were designated by their building principal as department chairpersons, instituted this action to obtain compensation for the additional work they performed. We conclude that the School District Board of Trustees has the exclusive authority to employ all personnel within the School District. Therefore, the summary judgment in favor of the School District is affirmed.

## BACKGROUND AND PROCEDURAL HISTORY

Allison Gilmore, Mona Stafford, Doug Vann, and Enid Trenholm (the "Teachers") have served as department chairpersons at Sandpoint Junior High without compensation for a number of years.[1] The position of department chairperson was initially instituted by the school's principal in the late 1980s as an informal liaison between the building principal and the other department teachers. The department chairpersons also assume additional duties not generally required of other teachers in the department. Despite the extra time and effort involved in fulfilling their roles, department chairpersons have not been compensated beyond their regular teaching salaries.

It is not clear how the Teachers were chosen as department chairpersons. When the building principal began the practice of appointing chairpersons, he initially selected the chairperson for each department. Since the initial selections, however, there has been no formal procedure for choosing which teacher will serve as department chair in any given year. Some chairpersons have been selected by the building principal, while others have been selected by their fellow teachers within the departments. Regardless of how the chairpersons have been selected, the building principal approved their designation and knew about the duties they were performing. The building principal never told the Teachers they would be compensated beyond their normal salaries, and did not obtain approval from the Board of Trustees of the School District for their appointments as department chairpersons.

In 1995, the Teachers discovered that the annually negotiated agreements between their bargaining representative, the Bonner County Education Association, and the Bonner County School District Board of Trustees ("Board") indicated "Department Chairman" was an "extra duty" position. The term "extra duty" is taken from a compensation schedule entitled "Extra Duty Pay" attached to the agreements. Each "extra duty" position listed on the schedule has a corresponding amount of additional compensation expressed as a percentage of the current year's base pay. The schedule is used to determine how much basketball coaches, football coaches, drama advisors, and others on the list

---

1. Some of the Teachers have been department chairpersons for several years. However, the longest potentially applicable statute of limitations would prevent recovery for any wages earned before the 1993–1994 school years. Mona Stafford also served, at the building principal's request, as a publications advisor without compensation. She has now been hired by the Board as a publications advisor and is receiving compensation, but seeks payment for the 1993–1994 and 1994–1995 school years.

should be paid. According to the "Extra Duty Pay" schedules, department chairpersons [2] were to be paid an additional ten percent of the current year's base salary.

Armed with the "Extra Duty Pay" schedule, the Teachers sought to obtain payment from the School Board for their services as department chairpersons. The Teachers unsuccessfully pursued a grievance with the Board. After the denial of their grievance, the Teachers filed this action in November 1995. The parties submitted cross-motions for summary judgment. Following a hearing on both motions, the trial court issued an order granting summary judgment to the School District.

On appeal, the Teachers argue they are entitled to compensation pursuant to the unambiguous terms of the negotiated agreements, which are incorporated into their contracts with the School Board. Alternatively the Teachers argue that the school building principal had the authority to bind the Board to compensate the Teachers for their services, or that the Board ratified the building principal's actions.

## 1. STANDARD OF REVIEW

■ Summary judgment shall be granted where the record reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Friel v. Boise City Housing Authority,* 126 Idaho 484, 887 P.2d 29 (1994). When the record fails to reveal any disputed issues of material fact, what remains are questions of law, over which this Court exercises free review. *Id.* "The mere fact that both parties move for summary judgment does not in and of itself establish that there is no genuine issue of material fact." *Kromrei v. AID Insurance Co. (Mut.),* 110 Idaho 549, 716 P.2d 1321 (1986). However, "when both parties move for summary judgment on the same issues and legal theories based on the same, essentially uncontroverted facts, the record is unlikely to reveal any genuine issue

of material fact." *V–1 Oil v. Petroleum Clean Water Trust,* 128 Idaho 890, 920 P.2d 909 (1996); *City of Chubbuck v. City of Pocatello,* 127 Idaho 198, 899 P.2d 411 (1995). Cross-motions for summary judgment must each be examined separately, alternatively resolving the reasonable inferences presented by the record in favor of the party opposing the motion. *Id.*

## 2. THE NEGOTIATED AGREEMENTS DO NOT CREATE AN EMPLOYMENT CONTRACT WITH ANY INDIVIDUAL TEACHER.

■ The terms of agreements negotiated between the local education association and the school district's board of trustees become incorporated into existing teachers' contracts. *Buhl Ed. Ass'n v. Joint Sch. Dist. No. 412,* 101 Idaho 16, 607 P.2d 1070 (1980); *Kolp v. Bd. Of Trustees of Butte Cty. Joint Sch. Dist. No. 111,* 102 Idaho 320, 629 P.2d 1153 (1981). The teachers' individual contracts are modified by applicable provisions in these negotiated agreements. *Id.*

■ The Teachers argue they are entitled to compensation for their services as department chairpersons based upon the inclusion of the "Extra Duty Pay" schedule in the negotiated agreements and the unambiguous language of the agreements. The Teachers assert that since there is no requirement that the Board reapprove compensation for the positions listed on the "Extra Duty Pay" schedule, they are entitled to compensation for the listed positions they performed. We disagree.

The negotiated agreements do not create an employment contract with any individual teacher, but merely dictate the terms of employment for those the board chooses to hire. As this Court noted in *Buhl Ed. Ass'n:*

> The result [of collective bargaining] is not … a contract of employment except in rare cases; no one has a job by reason of it and no obligation to any individual ordi-

**2.** The 1993–1994 and 1994–1995 schedules list the position as "Department Chairman K–12." The School District contends that this language refers to a department wide position that was never finally agreed upon in negotiations, rather

than the building and subject specific position held by the Teachers. For the purposes of the School District's summary judgment motion, we assume that the schedules refer to the position held by the Teachers.

narily comes into existence from it alone. . . .

After the collective trade agreement is made, the individuals who shall benefit by it are identified by individual hirings. The employer, except as restricted by the collective agreement itself . . . is free to select those he will employ or discharge.

*Buhl Ed. Ass'n* at 21, 607 P.2d at 1075 (quoting *J.I. Case Co. v. N.L.R. B.*, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762(1944).) The negotiated agreements control the terms of employment relationships created by the teachers' individual contracts with the school board. *Id.* The terms of the "Extra Duty Pay" schedules apply only to those employed in "extra duty" positions. Even accepting for the purpose of summary judgment that the "Extra Duty Pay" schedule is unambiguous and refers to building and subject specific department chairpersons as the Teachers argue, this provision, at best, sets the level of compensation for those the board hires to fill the position. No obligation to any individual teacher is created by the "Extra Duty Pay" schedule alone.

### 3. THE BUILDING PRINCIPAL HAD NO AUTHORITY TO HIRE THE TEACHERS FOR EXTRA DUTY POSITIONS.

The Teachers claim to be entitled to payment as department chairpersons under the "Extra Duty Pay" schedule. Consequently, they must show they were employed by the Board for that position. There is no indication that the Board communicated with the Teachers regarding their positions as department chairpersons. The Teachers, therefore, contend that the building principal had authority to act for the Board in hiring them as department chairpersons.

The building principal never told the Teachers that they were being hired under the "Extra Duty Pay" schedule, or even that they would be compensated for serving as department chairpersons. It appears that neither the Teachers nor the building principal knew that the term "Department Chairman" was listed on the schedule until they examined the negotiated agreements in 1995. Nevertheless, the Teachers argue that the

building principal utilized them as department chairpersons and that the negotiated agreements in force at the time provided that department chairpersons should be compensated. They argue that the building principal has the authority to operate the school, which would include the authority to utilize department chairpersons, and that the Board has already agreed, in the negotiated agreements, to compensate teachers who fill that role.

As already noted, however, the negotiated agreements do not obligate the Board to compensate anyone. To recover wages, the Teachers must show that they were hired as department chairpersons by someone with the authority to bind the Board on an employment contract. The question in this case is not whether the building principal had the authority to utilize teachers to perform inventories, review textbooks, chair meetings, coordinate departments, or any of the other responsibilities assumed by the Teachers as department chairpersons. Rather, the issue presented is whether the building principal had the authority to employ the Teachers under the "Extra Duty Pay" schedule on behalf of the Board, and therefore bind the Board to compensate them. We hold that the building principal did not.

Under Idaho Code § 33–501 school districts are governed by a board of trustees. The board has the responsibility and exclusive authority to employ both professional and noncertificated personnel necessary to maintain and operate the schools in the district. I.C. § 33–511; I.C. § 33–513; I.C. § 33–517. The board and the teachers within the school district expect that the board will make employment decision and that those decisions will follow the correct statutory procedure. *Brown v. Caldwell School Dist. No. 132*, 127 Idaho 112, 898 P.2d 43 (1995); *Rhoades v. Idaho Falls School Dist. No. 91*, 131 Idaho 827, 965 P.2d 187 (1998). They can rely upon employment decisions made in accordance with those procedures. *Corum v. Common School Dist. No. 21*, 55 Idaho 725, 47 P.2d 889 (1935). The building principal had no authority to bind the Board to an "extra duty" employment contract with

the Teachers. Only the Board had that authority.

## 4. RATIFICATION IS INAPPLICABLE.

■ The Teachers argue that even if the building principal did not have the authority as the agent of the Board to hire them under the "Extra Duty Pay" schedule, the Board ratified the building principal's actions by accepting their services as department chairpersons. Absent authority, a principal may be bound where it ratifies its agent's transaction. *Twin Falls Livestock Commission Co. v. Mid–Century Ins. Co.,* 117 Idaho 176, 786 P.2d 567 (Ct.App.1989). A principal ratifies the transaction only when it adopts the benefits of the unauthorized transaction with knowledge of all material facts. *Carpenter v. Payette Valley Co-op.,* 99 Idaho 143, 149, 578 P.2d 1074, 1080 (1978). In this case there was no transaction to ratify. The building principal never told the Teachers that they were being hired under the "Extra Duty Pay" schedule as department chairpersons. The building principal never told the Teachers that they were going to receive additional compensation for serving as department chairpersons.

## CONCLUSION

We affirm the summary judgment in favor of the School District. The Teachers have raised other issues regarding the statute of limitation and treble damages. In light of our holding, it is not necessary to address the Teachers' remaining contentions. Costs are awarded to the School District, but no attorney fees are allowed on appeal.

Chief Justice TROUT and Justices SILAK, SCHROEDER and JOHNSON, Pro Tem, concur.