# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 41524

CHERRI LYNN NIX, )
)
    Plaintiff-Appellant, )     Boise, January 2015 Term
)
v. )     2015 Opinion No. 38
)
ELMORE COUNTY, a political subdivision )     Filed: April 7, 2015
of the State of Idaho, )
)     Stephen W. Kenyon, Clerk
    Defendant-Appellant. )
)

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Elmore County. Hon. Lynn G. Norton, District Judge.

District court order granting summary judgment, <u>affirmed.</u>

Schlender Law Offices, Mountain Home, for appellant. E. Lee Schlender argued.

Naylor & Hales, Boise, for respondent. Bruce J. Castleton argued.

_____

BURDICK, Chief Justice

This appeal arises from Elmore County's decision terminating its employee, Cherri Nix ("Nix"), without providing her a pre-termination hearing pursuant to the Elmore County Personnel Policy ("ECPP"). Nix filed suit in Elmore County alleging, among other claims, that Elmore County violated the ECPP and breached the covenant of good faith and fair dealing when it terminated her employment without giving her a pre-termination hearing. The district court granted Elmore County's summary judgment motion on the basis that Nix was an at-will employee subject to termination at any time and for any reason, and that Nix failed to show a contractual relationship with Elmore County that would entitle her to a pre-termination hearing. Nix appeals that decision. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Cherri Nix worked as a custodial employee for Elmore County from June 1, 2007, until April 30, 2012, when her supervisor terminated her employment for numerous alleged instances of poor performance. Nix did not receive a pre-termination hearing prior to her dismissal.

1

Consequently, Nix filed a complaint in district court alleging, among other claims, a breach of employment contract. Elmore County's refusal to grant Nix a hearing is the basis of this appeal.

Early in 2011, Nix's supervisor grew concerned over Nix's job performance and addressed these concerns with Nix, requesting her to maintain daily task logs for the supervisor's review. Nix's performance improved in some areas over the first few months, but still required additional improvement.

In December of 2011, Nix's new supervisor, Vence Parsons ("Parsons"), gave Nix a list of custodial and maintenance duties and maintained a daily log to track Nix's performance. On February 1, 2012, Parsons gave Nix a Notice of Disciplinary Action – Notice of Last Chance ("Notice of Disciplinary Action"), detailing numerous alleged instances of poor job performance and falsified time cards. The Notice of Disciplinary Action advised Nix that Parsons was placing her on probationary status for one year and that she was, and would remain, an at-will employee during her probation. The Notice of Disciplinary Action further informed Nix that if she failed to meet the goals set forth in the notice or failed to show improvement in her progress reports, she would be subject to termination at any time during the probation.

On April 30, 2012, Parsons gave Nix a Notice of Termination, which terminated Nix's employment with Elmore County. At that time, Parsons reminded Nix that she was an at-will employee subject to termination with or without cause at any time during her probation period. The Notice of Termination explained that Nix's termination was due to continuing problems with her job performance. Furthermore, the Notice of Termination informed Nix that she could meet with the Elmore County Board of Commissioners (the "BOCC") if she felt her termination was based on unlawful discrimination, but noted that the BOCC would not consider any other issues pertaining to her termination.

Nix subsequently requested a hearing before the BOCC. Elmore County then sent Nix a Notice of Hearing, which stated, in relevant part: "Please be advised that you were an at-will employee, and as such are not entitled to a hearing regarding the reasons for your termination. The Board will not discuss performance-related issues."

Shortly thereafter, Elmore County's prosecuting attorney sent Nix a letter stating that Nix was an at-will employee on probation when she was terminated, and was therefore subject to termination at any time without a pre-termination hearing. The letter reiterated to Nix that her June 2012 hearing in front of the BOCC would only allow her to present discrimination claims

she had against the County. It stated that the BOCC would not entertain any legal authority in support of her request for an evidentiary hearing.

Nonetheless, at the June 2012 discrimination hearing, Nix requested the BOCC consider conducting a hearing so she could contest performance-related matters and present her case as to why she should not be terminated. On June 18, 2012, the BOCC issued its written decision confirming Nix's termination and denying her request for a hearing.[1] The BOCC reasoned that probationary employees are at-will employees and are not entitled to pre-termination hearings.

On December 11, 2012, Nix filed a complaint against Elmore County alleging, among other claims, that Elmore County: (1) violated the covenant of good faith and fair dealing when it terminated Nix's employment without providing her a pre-termination hearing; and (2) terminated Nix in violation of her "for cause" employment status under the ECPP.

Nix moved for partial summary judgment on January 23, 2013. On April 16, 2013, the district court issued a memorandum decision and order denying that motion. The district court concluded that Nix was an at-will employee and therefore subject to immediate termination at any time. The court reasoned that Nix was not entitled to a pre-termination hearing because she failed to establish an employment contract limiting the reasons for which Elmore County could terminate her employment. The district court also noted that "[t]he existence of a grievance procedure in an employee policy manual is insufficient to overcome the presumption of employment at-will and create an issue of fact for trial." Nix then moved the court for permission to appeal that decision and for a Rule 54(b) certification. The district court denied both motions.

On June 25, 2013, Elmore County moved for summary judgment based on the district court's April 16, 2013 decision that Nix: (1) was an at-will employee subject to immediate termination and not entitled to a pre-termination hearing; and (2) failed to set forth any genuine issue of material fact as to the status of her employment and her claims. The district court granted Elmore County's summary judgment motion on September 23, 2013, adopting the legal

---

[1] Specifically, the BOCC concluded:

> A probationary employee of the county is expressly an "at-will" employee. The ECPP (employment manual) states that the probationary period "shall be utilized for closely observing the employee's work . . . and for rejecting an introductory employee whose performance is not satisfactory." To construe that the ECPP creates anything other than "at-will" status for a probationary employee, or that the probationary employee is entitled to a hearing upon termination, would render the probationary employee concept meaningless under the ECPP. Probationary employees are not entitled to a hearing under the ECPP.

3

analysis it gave in its April 16, 2013 decision denying Nix's partial summary judgment motion. Nix timely appealed.

## II. ISSUES ON APPEAL

1. Whether the district court erred when it granted summary judgment on Nix's breach of employment contract claim.
2. Whether the district court erred when it granted summary judgment Nix's breach of implied covenant of good faith and fair dealing claim.
3. Whether Nix's supervisor acted outside of his authority under the ECPP.
4. Whether either party is entitled to attorney fees on appeal.

## III. STANDARD OF REVIEW

On appeal from the grant of a summary judgment motion, this Court applies the same standards the district court used. *Mackay v. Four Rivers Packing Co.*, 145 Idaho 408, 410, 179 P.3d 1064, 1066 (2008). Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). All reasonable inferences that can be drawn from the record are to be drawn in favor of the nonmoving party, and disputed facts are liberally construed in the nonmoving party's favor. *Mackay*, 145 Idaho at 410, 179 P.3d at 1066. If reasonable people could reach different conclusions or inferences from the evidence, summary judgment is inappropriate. *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 238, 108 P.3d 380, 385 (2005). However, to withstand summary judgment, the nonmoving party must submit more than just conclusory assertions that an issue of material fact exists. *Id.* "A mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment." *Id.*

As to contract disputes at summary judgment, "[w]hen the existence of a contract is in issue, and the evidence is conflicting or admits of more than one inference, it is for the jury to decide whether a contract in fact exists." *Johnson v. Allied Stores Corp.*, 106 Idaho 363, 368, 679 P.2d 640, 645 (1984).

## IV. DISCUSSION

Nix presents three issues on appeal. First, Nix argues that Elmore County violated the ECPP when it failed to provide her with a pre-termination hearing. Second, Nix argues that Elmore County breached the implied covenant of good faith and fair dealing when it denied Nix

4

a pre-termination hearing. Finally, Nix argues that Parsons did not have the authority to change the ECPP's terms and conditions. Before addressing the parties' arguments, we summarize the ECPP provisions and written correspondence relevant to this appeal.

**Relevant ECPP provisions.**

The second page of the ECPP provides a disclaimer in bold, all-caps lettering that states:

**THIS PERSONNEL POLICY IS NOT A CONTRACT. NO CONTRACT OF EMPLOYMENT WITH ELMORE COUNTY WILL BE VALID UNLESS IT IS SIGNED IN ACCORDANCE WITH PROPER PROCEDURES BY A SPECIFICALLY AUTHORIZED REPRESENTATIVE OF THE GOVERNING BOARD AND UNLESS IT IS SIGNED AND CONTAINS THE NAME OF THE EMPLOYEE WHO WOULD BE BENEFITTED BY THE CONTRACT.**

Then, under the heading "General Policies" on that same page, the ECPP states:

. . . The terms set forth in this booklet reflect public entity policy at the time of its printing, but they are subject to change at any time, after notifying the Elected Officials and at the discretion of the Elmore County Board of Commissioners.

Only the Elmore County Board of Commissioners has authority to establish general policy for Elmore County employees. The terms and conditions set forth in this policy, and in the resolutions and policy statements which support it, cannot be superseded by any other official's commitment, without the express written agreement of the Board of Commissioners.

The ECPP also sets forth a non-exclusive list of prohibited workplace conduct and provides that penalties for violating any of the rules may include, but are not limited to: (1) leave with or without pay; (2) suspension; (3) demotion; (4) verbal or written reprimand; and (5) dismissal. The section entitled "Employee Discipline Procedures and Principles" elaborates further on these principles. That section provides that the purpose of the discipline policy "is to establish a consistent procedure for maintaining suitable behavior and a productive working environment in the workplace," and that the procedures are "directory in nature and minor variations in the processes set forth herein shall not affect the validity of any actions taken pursuant to this policy."

The section then reiterates that a supervisor may respond to personnel policy violations by taking disciplinary steps including, but not limited to, (1) oral or written warnings; (2) suspension; (3) demotion; (4) probation; and (5) dismissal. The section further provides that "Elmore County reserves the right to take any of the prescribed steps in any order in the event that a supervisor deems a policy violation or action of the employee to be serious enough to

5

warrant a certain step." Finally, the section contains a heading entitled "Appeal Hearing (Pre-Deprivation)," which provides:

> The personnel policy of Elmore County establishes the right for full-time regular and part-time employees to a hearing prior to any final decision on discharge, demotion with attendant change in pay, or suspension without pay. . . . The following elements of procedure are for any such hearing to be held before the Supervising Elected Official, unless waived by the employee:
>
> . . .
>
> a. The employee shall be provided notice of the charges[] (Notice of Proposed Action) against the employee, an explanation of the employer's evidence, the proposed personnel action, and the procedure for requesting a hearing.

The ECPP defines "full-time regular employees" as "[e]mployees whose typical work schedule calls for at least 20 hours of scheduled work during each weekly payroll period. Full-time regular employees shall receive all employee benefits provided by Elmore County as such benefits now exist or may be subsequently changed." It further defines "part-time regular employees" as

> [e]mployees whose typical work schedule calls for at least 20 hours, but not as much as 34 ½ hours of scheduled work during each week. Part-time regular employees shall receive reduced employee benefits in accordance with policies adopted by the Board of Commissioners. The scope of benefits received may vary proportionately with the number of hours typically scheduled for a part-time regular employee. The number of hours scheduled may also affect the employee's obligation to participate in certain mandatory state benefit programs. Certain benefits may not be available.

The ECPP does not define "probationary employee." However, the ECPP does contain a section entitled "Probationary Period," which states:

> The probationary period shall be regarded as an integral part of the selection process and shall be utilized for closely observing the employee's work, for securing the most effective adjustment of a new employee to his or her position and for rejecting an introductory employee whose performance is not satisfactory. The probationary period will typically be a standard 90 to 180 days.

This section was amended on December 15, 2008, to change the probationary period to one year.[2]

**Written Statements.**

---

[2] The amendment changed "The probationary period will typically be a standard 90 to 180 days" to "The initial probationary period will be 1 year."

The Notice of Disciplinary Action that Parsons gave to Nix detailed numerous instances of Nix's poor job performance and notified her that pursuant to the ECPP, her acts and omissions subjected her to discipline including, but not limited to, dismissal from employment. After listing several instances of deficient performance and inaccuracies in time cards, the Notice stated:

> You are hereby notified that . . . it is my intention to impose the following discipline:
>
> . . . .
>
> 2. You are placed on Probationary Status for a period of one (1) year. Your probation will run until February 1, 2013. You are, and remain, an at-will employee.
>
> 3. I am providing you with a Warning that this is your Last Chance to continue employment with Elmore County.
>
> . . . .
>
> 5. A failure to meet the goals set forth herein will subject you to termination at the conclusion of your year-long probationary period. A review of progress will be made with you throughout this year-long period. If progress is not evident, you may be subject to immediate termination at any time during the probationary period.

The Notice gave Nix the opportunity to respond and to meet with Parsons to discuss the matters set forth therein. It noted that Nix's failure to meet with Parsons would constitute a waiver of her opportunity to provide a response to the proposed personnel action and to the information contained in the Notice. The Notice reiterated that Elmore County would not tolerate further misconduct without imposing more serious discipline including, but not limited to, termination from employment.

After Nix failed to show improvement in her job performance, she received a Notice of Termination, which provided, in relevant part:

> On February 1, 2012, you were served with a Notice of Last Chance based upon a disciplinary action being taken against you. You were placed on probationary status for a period of one (1) year, during which time you were informed that you would be an at-will employee subject to termination with or without cause at any time during your probationary period. You were, also, warned that this was your last chance to continue employment with Elmore County, and any further performance problems could result in your termination of employment.
>
> Based upon the fact that your performance in your position has not met our expectations and you have not fulfilled the performance requirements as set out in the Notice of Last Chance, you are hereby notified that your employment as a Custodial and Maintenance Employee with Elmore County is hereby terminated effective this 30th day of April 2012.

7

. . . .

> Should you believe that this termination is based upon an unlawful discriminatory purpose, you have seven (7) days from termination to notify me that you wish to meet with the Elmore County Board of Commissioners to discuss this issue. No other issues pertaining to your termination will be considered at that time.

Upon requesting a hearing from the BOCC, Nix received a notice of hearing, which stated:

> Pursuant to your request, the Elmore County Board of Commissioners have scheduled a meeting to discuss any discrimination claims you may have against Elmore County, its agents or employees. Please be advised that you were an at will employee, and as such are not entitled to a hearing regarding the reasons for your termination. The Board will not discuss performance-related issues.

Finally, Nix also received a letter from Kristina Schindele, Elmore County's prosecuting attorney, which informed Nix that based upon Nix's prior notice of her at-will status, the pre-deprivation procedures set out in the Personnel Policy did not apply to her. The letter reminded Nix that the BOCC would not engage in an evidentiary hearing and that it would not entertain any further legal authority Nix had in support of her request for an evidentiary hearing. With the foregoing information in mind, we address the parties' arguments below.

## A. The district court properly granted summary judgment to Elmore County on Nix's breach of employment contract claim because the ECPP was not an enforceable contract.

Nix argues Elmore County wrongfully discharged her in violation of the ECPP. Essentially, Nix argues that she was a full-time permanent employee when Elmore County placed her on probation and that because the ECPP does not specifically state that disciplinary probation extinguishes the "established right" to a hearing, she was entitled to a pre-termination hearing. To support this argument, Nix points to the language in the ECPP that provides "[t]he personnel policy of Elmore County establishes the right for full-time regular and part-time employees to a hearing prior to any final decision on discharge. . . ." Nix asserts that her probationary status did not "silently terminate her full-time permanent status thus subjecting her to the risk of being terminated without cause the same as if she was a new hire." Ultimately, Nix asserts that there are two types of "probationary" employees: introductory probation employees, who are not entitled to a pre-termination hearing; and disciplinary probation employees, who Nix contends maintain their regular full-time employment status and right to a pre-termination hearing.

8

Employment in Idaho is presumed to be at-will unless the employee is hired pursuant to a contract that states a fixed term or limits the reasons for discharge. *Jenkins*, 141 Idaho at 240–41, 108 P.3d at 387–88; *Mitchell v. Zilog, Inc.*, 125 Idaho 709, 712, 874 P.2d 520, 523 (1994). Without a contractual agreement limiting a party's right to terminate the employment relationship, either party may terminate it at any time or for any reason without incurring liability. *Zilog*, 125 Idaho at 712, 874 P.2d at 523. "This rule reflects the judiciary's reluctance to bind employers and employees to an unsatisfactory and potentially costly situation, although we recognize that either party is likely to be damaged by an unforewarned termination of the employment relationship." *Id.*

In the absence of an express contract, courts may imply a limit to the at-will employment presumption where the circumstances surrounding the employment relationship could cause a reasonable person to conclude that the parties intended a limitation on discharge. *Id.* In particular, a plaintiff can rebut the at-will presumption by showing the parties intended that an employee handbook or manual constitute an element of an employment contract. *Id.* However, the manual's statements and policies "must be more than vague statements of opinion or prediction, and policies must manifest an intent that they become part of the employment agreement." *Bollinger v. Fall River Rural Elec. Co-op., Inc.*, 152 Idaho 632, 638, 272 P.3d 1263, 1269 (2012). Indeed, an employer may provide guidelines, which are necessary conditions for continued employment, and avoid having them read as a guarantee for a specific term of employment or as placing limits on the reasons for discharge. *Jenkins*, 141 Idaho at 242, 108 P.3d at 389.

Whether an employee manual constitutes an element of an employment contract is generally a question of fact unless the handbook "specifically negates any intention on the part of the employer to have it become a part of the employment contract." *Zilog*, 125 Idaho at 712–13, 874 P.2d at 523–24. Thus, pursuant to *Zilog*, this Court must examine the ECPP together with any written and oral statements made to Nix "to determine first, whether they specifically negate any intention of contract formation." *Id.* at 713, 874 P.2d at 524. If not, this Court must then determine if there is a question of fact as to whether the parties intended the ECPP to express a term of the employment contract. *Id.*

The district court found that the ECPP as a whole was not intended to create enforceable contract rights. Accordingly, the district court determined that Nix was an at-will employee and

9

Elmore County could terminate her at any time without incurring liability. Consequently, the district court concluded that Elmore County did not violate the ECPP or wrongfully discharge Nix when Elmore County denied her a pre-termination hearing. After reviewing the ECPP, together with the various written notices given to Nix and other evidence in the record before this Court, we agree with the district court's conclusion.

First and most importantly, the ECPP explicitly disclaims any intent to have its provisions become part of an employment contract. Second, the ECPP informs Elmore County employees that the terms in the policy are *discretionary* and that the BOCC can change them at any time. When these statements are read together with the ECPP as a whole, the ECPP did not create enforceable contract rights. Instead, the ECPP's provisions are more aptly characterized as guidelines and expectations. An employer may provide guidelines, which are necessary conditions for continued employment, without having them read as a guarantee for a specific term of employment. *Jenkins*, 141 Idaho at 242, 108 P.3d at 389. Nix does not point to a signed contract or any other admissible evidence to indicate that the ECPP created enforceable contract rights and in particular, the right to a pre-termination hearing. Therefore, Nix has failed to present a genuine issue of material fact that the ECPP created an enforceable contract giving her the right to a pre-termination hearing. Elmore County's written statements to Nix further support this conclusion.

In the absence of an express contract, a limitation to the at-will employment relationship will only be implied when the circumstances surrounding the employment relationship could cause a reasonable person to conclude that the parties intended a limitation on discharge. This is not the case here. Based on the facts in this case, a reasonable person could not conclude that Nix was entitled to a pre-termination hearing. Indeed, the ECPP's clear disclaimer, the Notice of Disciplinary Action, and the Notice of Termination left little doubt that the ECPP's pre-termination hearing provision did not apply to Nix. The Notice of Disciplinary Action specifically told Nix that she would be subject to immediate termination at any time during her probationary period if she failed to improve her job performance. This was sufficient to put her on notice that she could be discharged at any time without prior warning. These notices also effectively disclaimed any "implied" rights contained in the ECPP, including any implied right to a pre-termination hearing. Therefore, the ECPP's clear disclaimer and the notices Elmore County

gave Nix are such that Nix could not have reasonably held an expectation to a pre-termination hearing.

Despite the ECPP's disclaimer and the Notice of Disciplinary Action, Nix asserts that she was still entitled to a pre-termination hearing under the ECPP even if she was an at-will employee. Nix asserts that her probation did not terminate her full-time permanent employee status or her right to a pre-termination hearing. To support this argument, Nix cites to *McGraw v. City of Huntington Beach*, 882 F.2d 384 (9th Cir. 1989). However, Nix's reliance on *McGraw* is misplaced. In that case, the City promoted McGraw to a new position and placed her on a six-month "promotional probationary period." *McGraw*, 882 F.2d at 386. Five months into her probation, the City told McGraw that she would not pass probation and placed her on a paid leave of absence. *Id.* After McGraw attempted to exercise her right to return to her former position, the City terminated McGraw's employment. *Id.* at 387. To support its decision, the City cited a provision in the employment manual for the proposition that a probationary employee could be terminated at any time without cause and without the right to appeal. *Id.* McGraw subsequently filed a complaint alleging she was deprived a property right in continued public employment. *Id.*

The federal district court granted the City's summary judgment motion, "ruling that appellant was a 'probationary employee' and, as such, was not entitled to pre-termination notice and a hearing as she indisputably would have been as a matter of procedural due process if she had been a 'permanent employee' when she was terminated. *Id.* The Ninth Circuit reversed, reasoning that

> [i]n light of the City Council's stated purpose of protecting City employees from dismissal without "just cause" and the City's policy of fostering devotion to the competitive service by encouraging promotional advancement, it is very difficult to accept an argument that the City Council intended "permanent employee" status, once earned, to terminate *sub silentio* upon promotion, once again subjecting the promoted employee to the risks of what is essentially the "at-will" employment status of newly-hired probationary employees.

*Id.* at 388.

*McGraw* is distinguishable from this case on several grounds. First, *McGraw* is factually distinguishable in that the employee in that case was promoted to a new position and placed on a "promotional probationary period." Nix was not promoted before she was placed on probation. Rather, Nix's probation was a disciplinary step her supervisor took in response to her poor work

11

performance. Furthermore, unlike Nix, when the employee in *McGraw* was placed on probation, she was not told that she was an at-will employee during her probation or that she was subject to immediate termination during her probation. Because the employee in *McGraw* had recently been promoted, the Ninth Circuit could not accept the premise that her permanent employee status was terminated upon promotion. Here, Nix's probation was a disciplinary step and Nix's Notice of Disciplinary Action specifically informed Nix that she was an at-will employee subject to immediate termination at any time during her probation. Therefore, Nix could not have reasonably continued to hold an expectation in continued employment or an expectation of the right to a pre-termination hearing. Therefore, this case is factually distinguishable from *McGraw*.

Furthermore, *McGraw* involved a federal constitutional due process claim, whereas this case involves wrongful termination and breach of implied covenant of good faith and fair dealing claims. Finally, *McGraw* involved California law and Personnel Rules that the City of Huntington Beach formally adopted by resolution. *Id.* at 387. Indeed, the Ninth Circuit noted that the Personnel Rules were the rough equivalent of municipal ordinances. *Id.* at 387 n. 11. It does not appear that Elmore County formally adopted the ECPP through a resolution. Rather, the ECPP merely provides guidelines for employees, not hard and fast rules. Indeed, Elmore County's policy is entitled "Elmore County Personnel *Policy*," whereas the City of Huntington Beach's policy was entitled "Personnel *Rules*." More significantly, the ECPP in this case contains a clear disclaimer stating that the ECPP is not a contract. The Personnel Rules in *McGraw* contained no such disclaimer. Therefore, Nix's reliance on *McGraw* is misplaced.

Because there was a disclaimer in the ECPP explicitly stating that the ECPP was not a contract between employees and Elmore County, the provision providing for a pre-termination hearing is not binding on Elmore County. The disclaimer retained Nix's at-will status even though "the policies also provide[d] . . . for an appeals process." *Lawson v. Umatilla Cnty.*, 139 F.3d 690, 693 (9th Cir. 1998). This is particularly true given the notices Nix received that specifically stated she was, and would remain, an at-will employee and could be terminated at any time during her probation. Therefore, we hold that the ECPP was not an employment contract and did not create enforceable contract rights for Nix. Accordingly, the district court did not err when it granted summary judgment to Elmore County on Nix's breach of employment contract claim.

12

**B. The district court properly granted summary judgment to Elmore County on Nix's good faith and fair dealing claim because Nix failed to identify a contractual duty that Elmore County failed to perform in good faith.**

Nix also argues that Elmore County breached the implied covenant of good faith and fair dealing when it refused to provide Nix with a pre-termination hearing.

The covenant of good faith and fair dealing is implied in all employment agreements, including at-will employment relationships. *Jenkins*, 141 Idaho at 242–43, 108 P.3d at 389–90. The covenant requires the parties to perform in good faith the obligations contained in their employment agreement. *Bollinger*, 152 Idaho at 640, 272 P.3d at 1271. A party breaches the covenant when it violates, qualifies, or significantly impairs any benefit or right of the other party under the employment contract—whether express or implied. *Jenkins*, 141 Idaho at 243, 108 P.3d at 390. However, "the covenant does not create new duties that are not inherent in the agreement itself and, thus, cannot create a for-cause termination limitation in an at-will employment agreement." *Id.* at 242–43, 108 P.3d at 389–90. The covenant only arises in connection with the terms the parties agreed to, and does not create new duties that are not inherent in the employment agreement. *Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 562, 212 P.3d 982, 992 (2009). This Court has held that "the covenant is an objective determination of whether the parties have acted in good faith in terms of enforcing the contractual provisions." *Jenkins*, 141 Idaho at 243, 108 P.3d at 390.

As discussed above, the ECPP did not create any binding contractual rights for Nix or place restrictions on Elmore County's right to terminate Nix. Nix was an at-will employee at the time of her discharge. Accordingly, Elmore County did nothing more than exercise its contractual right when it terminated Nix's employment. Because the ECPP did not create any binding contractual rights, Elmore County did not "violate, qualify, or significantly impair" any benefit or right of Nix. The implied covenant of good faith "does not create new duties that are not inherent" in the employment relationship, nor does it alter an employer's right to fire an at-will employee by creating a for cause requirement. Nix presents no argument, nor are there facts in the record to suggest, that Elmore County failed to perform in good faith obligations under an employment agreement. Therefore, the district court properly granted Elmore County summary judgment on Nix's good faith and fair dealing claim.

13

**C. Nix's supervisor did not impermissibly change the ECPP's terms and conditions.**

Nix asserts that Parsons, her supervisor, did not have authority to change the ECPP's terms and conditions. Nix asserts that Parsons changed Nix's employment status from full-time regular employee to at-will employee, depriving her of "an agreed upon covenant:" the right to a hearing. To support this argument, Nix points to the following statement in the ECPP:

> Only the Elmore County Board of Commissioners has authority to establish general policy for Elmore County Employees. The terms and conditions set forth in this policy, and in the resolutions and policy statements which support it, cannot be superseded by any other official's commitment, without the express written agreement of the Board of Commissioners.

Nix asserts that only the BOCC had the authority to change Nix's employment status to at-will and Parsons acted outside his authority in doing so.

Parsons did not change any of the ECPP's terms and conditions. Rather, Parsons took disciplinary steps that the ECPP explicitly authorized. Specifically, the ECPP authorized Parsons to give Nix written and oral warnings, to place her on probation, and to terminate her employment. Parsons followed the ECPP's guidelines when he placed her on probation and the Notice of Disciplinary Action contained all the information the ECPP required. The Notice of Disciplinary Action merely informed Nix what her probationary status entailed, including that she was an at-will employee and subject to termination at any time during her probation.

To the extent the Notice of Disciplinary Action "changed" the ECPP's terms and conditions by informing Nix she was an at-will employee subject to termination at any time, Nix implicitly accepted those changes when she continued to work after receiving the Notice of Disciplinary Action. *See Bollinger*, 152 Idaho at 638, 272 P.3d at 1269; *Watson v. Idaho Falls Consolidated Hospitals, Inc.*, 111 Idaho 44, 48, 720 P.2d 632, 636 (1986). Furthermore, the BOCC reviewed and confirmed Nix's termination and the decision that Nix was not entitled to a pre-termination hearing. By affirming Nix's termination and that Nix was not entitled to a pre-termination hearing, the BOCC effectively ratified any alleged "changes" Parsons may have made to the ECPP's terms and conditions. *Gilmore v. Bonner Cnty. Sch. Dist. No. 82*, 132 Idaho 257, 261, 971 P.2d 323, 327 (1999) (stating that a principal ratifies an unauthorized transaction when it adopts the benefits of the transaction with knowledge of all material facts). Therefore, Nix's argument that Parsons impermissibly changed the ECPP's terms and conditions fails.

14

**D.  Elmore County is entitled to attorney fees on appeal.**

Both parties seek attorney fees on appeal. However, because Nix is not the prevailing party on appeal, she is not entitled to attorney fees and we need only address whether Elmore County is entitled to attorney fees. Elmore County asserts that it is entitled to attorney fees pursuant to Idaho Code sections 12-107, 12-117, and 12-120. Idaho Code section 12–120(3) allows the prevailing party on appeal to recover attorney fees when the underlying claim is a commercial transaction. *Printcraft Press, Inc. v. Sunnyside Park Utils., Inc.*, 153 Idaho 440, 461, 283 P.3d 757, 778 (2012). Here, Nix alleged a breach of her employment contract, so Idaho Code section 12–120(3) applies. *Sanders v. Bd. of Trustees of Mountain Home Sch. Dist. No. 193*, 156 Idaho 269, 274, 322 P.3d 1002, 1007 (2014). Thus, as the prevailing party on appeal, Elmore County is entitled to attorney fees under Idaho Code section 12-120(3).

## V.  CONCLUSION

We affirm the district court's grant of Elmore County's summary judgment motion. Costs and attorney fees to Elmore County.

Justices EISMANN, W. JONES and HORTON, **CONCUR.**

J. JONES, Justice, concurring in the result.

While I concur in the result reached by the Court, this case presents a good opportunity to address some misconceptions that parties seem to have about the limits of the at-will employment doctrine and the scope of employment manual disclaimers. The situation is not as cut and dried as some litigants seem to think.

The first misconception, which appears to be fairly widespread based upon cases that have been presented to the Court in recent years, is that a disclaimer in a personnel policy manual saying that the manual is not a contract negates contractual status for any provision contained in the manual. That is simply not correct. In the present case, the Elmore County Personnel Policy (Policy) boldly states, "THIS PERSONNEL POLICY IS NOT A CONTRACT. NO CONTRACT OF EMPLOYMENT WITH ELMORE COUNTY WILL BE VALID UNLESS IT IS SIGNED IN ACCORDANCE WITH PROPER PROCEDURES BY A SPECIFICALLY AUTHORIZED REPRESENTATIVE OF THE GOVERNING BODY AND UNLESS IT IS SIGNED BY AND CONTAINS THE NAME OF THE EMPLOYEE WHO WOULD BE BENEFITTED BY THE CONTRACT**."** Does this language mean that nothing contained in the Policy can have contractual status? The answer is no. The disclaimer means that

15

the Policy, in whole, does not constitute a contract. It does not mean that individual provisions contained in the Policy may not be a part of the employer-employee contract.

Let us step back at this point and consider what constitutes the contract between an employer and employee. It starts with the employer needing help for a specific position or task. The employer makes his need known and offers the position with specific job requirements and benefits—hours to be worked, services to be provided, wages to be paid, benefits to be provided, and the like. The employee may negotiate some of the terms but when the parties agree that the employer will hire the employee, a contract is formed. There can be no employer-employee relationship without the formation of a contract between those parties. One of the terms of the contract that is often contested is the duration of the arrangement—how long will the contract be in effect. That is where the at-will doctrine comes into play.

An employment manual may or may not deal with the issue of contract duration. The Elmore County Policy does not deal with the issue of contract duration. There is nothing in the Policy that indicates that employment with Elmore County is at-will, on the one hand, or that it is of specific or continuing duration, on the other hand. The Policy does, however, contain a number of provisions that are contractual in nature and which this Court would obviously enforce in a legal action. Section IV: Employee Classification, Compensation and Benefits contains a number of such provisions. Subsection C. 6 allows accumulation of compensatory time if an employee must work more than 40 hours a week and provides that "[a]ny hours accrued over the 80 maximum will be paid during the pay period it was accrued or the following pay period." Subsection C. 8 provides for payment of overtime work at one and a half times the hourly rate or, alternately, the granting of compensatory time at the same rate. Subsection C. 11 provides "[l]eave will be granted to full-time employees called to jury duty or to serve as a court witness: Full pay will be provided for the duration of such service." Similarly, the Policy provides for a set schedule for accrual of vacation and entitlement to payment for unused vacation hours upon separation from employment, sick leave benefits, paid holidays, and the like. Specific to this case, the disciplinary section of the Policy provides: "The personnel policy of Elmore County establishes the right for full-time regular and part-time employees to a hearing prior to any final decision on discharge, demotion with attendant change in pay, or suspension without pay."

While the Policy, itself, is not a contract, it would be hard to deny that specific provisions in the Policy do form a part of the employment contract between Elmore County and its employees. If Elmore County refused to pay an employee at the agreed rate for hours worked, the employee would obviously have a cause of action based on the employment contract. If an employee separated from employment for any reason with unused vacation time, the employee would obviously be entitled to be paid in accordance with the Policy. For example, in *Jackson v. Minidoka Irr. Dist.*, 98 Idaho 330, 335−36, 563 P.2d 54, 59−60 (1977), we held that an at-will employee was entitled to recover payment for vacation time accrued to the time of termination based on a provision in her employment handbook. We said: "Vacation pay may be a matter of contract between the employer and the employee. As with the pension plan, the provisions of the District's handbook relating to vacation time become part of the employment contract." *Id*.

Therefore, while the Policy, as a whole, is not a contract by virtue of the disclaimer, there are provisions in the Policy that evidence agreed-upon items of a contract between the employer and the employee. The language in the Policy disclaimer that "[n]o contract of employment with Elmore County will be valid unless it is signed in accordance . . ." is obviously incorrect because the simple hiring of an employee causes a contract to come into effect. Elmore County simply cannot hire a person without a contract coming into existence. It may not be a written contract but it is a contract nevertheless.

The Policy does not include any provision indicating the duration of an Elmore County employee's employment contract. There are individual provisions within the Policy that could be construed in favor of at-will status, meaning no specific duration such that the contract could be terminated at any time for any reason, or against at-will employment. Section IV.B speaks of a probationary period for new employees for the purpose of "observing the employee's work . . . and for rejecting an introductory employee whose performance is not satisfactory." This provision, in itself, could be interpreted either way. That is, either that the employee can be terminated at any time during the probationary period or that the employee can only be terminated if his or her performance is not satisfactory. If the employee successfully completes the probationary period, he or she presumably becomes either a full-time regular employee under Section IV.A.1.a. or a part-time regular employee under Section IV.A.1.b. This might imply that once the employee runs the probationary gauntlet, he or she is immune from termination so long performance is satisfactory. Since the Policy does not contain a provision regarding the duration

17

of any employment contract, the default position under Idaho law is that the contract is presumed to be at-will—subject to termination at any time. If the employee can point to specific evidence rebutting the presumption, the issue is a question of fact for decision by a jury.

Focusing back on the present case, even if it is determined that the duration of the contract here is at-will, i.e. of indefinite duration and terminable at any time, specific contractual formalities can still come into play. Counsel for Nix conceded during oral argument that her employment with Elmore County was at-will in nature. However, counsel contended that Nix was still entitled to the pre-discharge hearing provided in the Policy. Although counsel did not cite the specific case on point on this issue, we have previously stated that, although an employee at will may be discharged without cause and has no right to a hearing on the matter, where "a hearing is provided as a matter of contract . . . the parameters of the hearing are also defined by the contract." *Jackson*, 98 Idaho at 334, 563 P.2d 54 at 58. The hearing to which the employee may have been entitled in *Jackson* was contained in an employee handbook. In *Jackson*, however, the Court determined that the provision in the handbook did not provide for a hearing under the particular circumstances of Jackson's termination.

The provision in the Policy appears to be unequivocal in giving "full-time regular and part-time employees" the right to a pre-discharge hearing. This reading was bolstered at oral argument by the County's counsel, who repeatedly stated that the pre-discharge provision was a "benefit" offered to County employees. If it is a benefit, it is a contractual provision regardless of the disclaimer in the Policy and subject to enforcement in a contract action.

Had Nix been a full-time regular or part-time employee at the time of her discharge, she would have been entitled to a pre-discharge hearing before her "Supervising Elected Official," whoever that was—the Policy does not define that term or indicate who that may have been in Nix's situation. However, at the time of her discharge, she was on probationary status. Under the Elmore County disciplinary framework, a supervisor may place an employee on probation. The probation here specifically stated, "You are, and remain, an at-will employee." It also stated that if progress is not evident during the one-year probationary period, "you may be subject to immediate termination at any time during the probationary period." The notice of disciplinary action was signed by Nix's supervisor and Nix signed to acknowledge receiving the same. Although the Policy does not specifically set out the rights and obligations of an employee with regard to a probation that is not related to a new hire, the Court is correct in concluding that by

continuing to work under the terms set out in the notice of disciplinary action, Nix impliedly agreed to work under such terms, including the term whereby she was subject to immediate termination for lack of progress on her disciplinary plan. Since she agreed to the plan and since she was not by virtue of her probation a full-time regular or part-time employee at the time of her discharge, she was not entitled to the pre-discharge hearing provided for the benefit of those types of employees. Thus, the Court has reached the correct result.